IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-md-03160-PAB-TPO

MDL No. 3160

IN RE ARCHERY PRODUCTS ANTITRUST LITIGATION

---

**DIRECT PURCHASER PLAINTIFFS' RECOMMENDED
ORGANIZATIONAL LEADERSHIP STRUCTURE**

---

Pursuant to the Court's Preliminary Case Management Order, the Direct Purchaser Plaintiffs[1] respectfully recommend the following consensus leadership structure for the proposed class of "direct purchaser" consumers:

**Interim Co-Lead Class Counsel**: Hausfeld LLP, Kesselman Brantly Stockinger LLP, DiCello Levitt LLP, and Freed Kanner London & Millen LLC. **Liaison & Trial Counsel**: Olson Grimsley Kawanabe Hinchcliff & Murray LLC. **Plaintiffs' Steering Committee**: Lockridge Grindal Nauen PLLP, Gustafson Gluek PLLC, Zimmerman Reed LLP, and Paul LLP.

***All*** Direct Purchaser Plaintiffs in this case support the leadership structure proposed above, reflecting deep collaboration between the parties and their counsel. Together, the proposed firms represent a premier cross-section of the plaintiff-side antitrust bar and routinely lead the most significant class actions across the United States. They are bolstered here by exceptional Denver-based counsel, who regularly tries and

---

[1] The Direct Purchaser Plaintiffs' cases are listed in Exhibit A.

wins cases in this District.

From a proprietary investigation, to an original complaint, to a successful effort to centralize this action in the District of Colorado—this group has already invested significant time and resources to originate and advance this action. The proposed structure was carefully crafted based on these firms' extensive experience in prosecuting complex antitrust class actions, their contributions to developing the claims alleged in this case, and their success in centralizing the action in Denver. If appointed, these firms will provide a diverse team of counsel from across the country—including women, attorneys of color, and members of the LGBTQ community—who will prosecute this case to trial with efficiency, integrity, and collegiality.

Hausfeld, Kesselman Brantly, DiCello Levitt, and Freed Kanner are the right four-firm team to serve as Interim Co-Lead Class Counsel for the proposed class. They are widely recognized as among the nation's foremost plaintiff-side antitrust firms, with deep benches of experienced litigators (and one antitrust law professor), and are regularly appointed to lead complex cases such as this, as detailed in their attached firm resumes. *See* Exs. B-J. Collectively, they have recovered tens of billions of dollars for victims of alleged corporate abuse. Hausfeld succeeded, for instance, in certifying a class and obtaining $169 million in settlements against the same poultry companies whose executives were acquitted in a criminal trial before this Court.[2] And just weeks ago, DiCello Levitt and Hausfeld worked together to secure a $20 million jury verdict in a

---

[2] *See, e.g.*, Settlement Website, *In re Broiler Chicken Grower Antitrust Litigation No. II*, https://www.broilergrowersantitrustsettlement.com/.

landmark human rights bellwether trial for three named plaintiffs, which translates to billions of dollars in damages for the remaining 23,000 members of the certified class.[3]

In addition to their antitrust and complex litigation experience, the proposed leadership team has devoted significant time and resources to investigating this case and securing its centralization in this District. *See* Fed. R. Civ. P. 23(g)(1)(A). Before the first complaint was filed, Hausfeld and Kesselman Brantly began investigating the U.S. archery industry for anticompetitive conduct, without the benefit of any prior government enforcement action or media reporting. Their investigation entailed more than 450 hours of attorney time uncovering the alleged cartel—including recovering information that had been removed from the internet—and drafting the original class action complaint that kicked off this multi-district litigation ("MDL"). As similar complaints followed in courts around the country, DiCello Levitt moved to centralize the actions before the Judicial Panel on Multidistrict Litigation ("JPML"). And finally, in the weeks leading up to the JPML hearing, Freed Kanner and Olson Grimsley joined forces with DiCello Levitt, Hausfeld, and Kesselman Brantly to support the District of Colorado as the best venue for this MDL.

If the Court approves the proposed structure, the four Interim Co-Lead firms will be supported by Olson Grimsley as Liaison Counsel, who will also serve as Trial Counsel with the Co-Leads. Olson Grimsley is a Denver-based boutique with a public-interest mission, bringing immense experience trying cases inside and outside of this District. In the past two years alone, the firm has tried seven cases, including a major plaintiffs'

---

[3] Mark Scolforo, *US Jury Issues $20M Verdict Against French Bank BNP Paribas Over Sudanese Atrocities*, AP NEWS (Oct. 18, 2025), https://apnews.com/article/sudan-bnp-paribas-lawsuit-darfur-albashir-7bacbbb049bc79e1dfa805a02e06bd3c.

antitrust judgment in this District.[4] They offer invaluable local and trial expertise.

The proposed Plaintiffs' Steering Committee of Lockridge, Gustafson, Zimmerman Reed, and Paul LLP will round out the proposed leadership structure. With additional, deep benches of antitrust litigators, these firms can provide the resources and manpower needed to prosecute this complex case—which will involve discovery and motion practice against more than a dozen sophisticated defendants and defense firms. Like Olson Grimsley and the four proposed Co-Lead firms, the proposed Plaintiffs' Steering Committee firms have all worked amicably and diligently to advance the case.

Lastly, this proposed structure is built on the roles in the Manual for Complex Litigation and the standards that courts in this District consider in appointing leadership. The only enhancement to the roles in the Manual for Complex Litigation is meant to take advantage of Liaison Counsel's extensive trial experience to have them also serve as Trial Counsel. With these firms, the Court and the Class will receive experienced and diverse counsel, who are ready to work collaboratively to advance the case to its end.

I.    **BACKGROUND**

This multi-district litigation alleges a nationwide price-fixing conspiracy across the U.S. archery industry. The Plaintiffs claim that, because of this conduct, American archers and bowhunters paid supra-competitive prices for bows, arrows, and related products for more than a decade. The Plaintiffs thus seek to recover more than a billion dollars for these injured consumers, which could impact virtually all sales of archery products

---

[4] *Chase Mfg., Inc. v. Johns Manville Corp.*, ECF No. 382, Case No. 19-cv-872-MEH.

throughout the United States.

At the heart of this case is a classic theory of antitrust liability. The Plaintiffs allege that the Defendants conspired to collectively raise and fix the retail price of archery products through minimum advertised pricing ("MAP") policies. Plaintiffs claim that the defendants' horizontal coordination of MAP policies between direct competitors is a *per se* violation of the antitrust laws.

Hausfeld and Kesselman Brantly filed the first complaint in May 2025, on behalf of Plaintiff Joseph Santarlas in the District of Utah.[5] That filing sent a shockwave through the American archery and bowhunting industries, underscoring the breadth and impact of its claims.[6] Twenty-three related actions eventually followed in federal district courts across the country. Each related action alleges similar facts and claims against nearly all of the same defendants. Finally, on October 16, 2025, the JPML centralized the related actions in this Court for all pretrial proceedings, pursuant to 28 U.S.C. § 1407.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(g)(3), the Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." By appointing interim counsel, the Court can clarify responsibilities and protect the interests of the proposed class prior to ruling on class certification. *In re DISH Network Data Sec. Incident Litig.*, No. 23-CV-01168, 2023 WL 11964095, at *1 (D. Colo. Nov. 9, 2023) (citing *Ann. Manual for Complex Litig.* § 10.221 (4th ed.)).

---

[5] *Santarlas v. Hoyt Archery, Inc.*, No. 25-cv-436 (D. Utah May 30, 2025).
[6] *See, e.g.*, Mike Scarcella, *Retailer Bass Pro, Cabela's Hit with Price-Fixing Class Action*, REUTERS (June 2, 2025).

"MDL transferee judges, who must appoint plaintiff leadership at the outset of the proceedings, have often adopted the Rule 23(g) factors as qualifications for leadership roles." *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig.*, No. 16-MD-2695, 2018 WL 4200315, at *4 (D.N.M. Aug. 31, 2018) (citation omitted). Thus, in evaluating applicants under Rule 23(g), the Court considers: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).[7]

## III.    ARGUMENT

Hausfeld, Kesselman Brantly, DiCello Levitt, and Freed Kanner are the right team to serve as Interim Co-Lead Class Counsel, supported by Olson Grimsley as Liaison and Trial Counsel, and a Plaintiffs' Steering Committee of Lockridge, Gustafson, Zimmerman Reed, and Paul LLP. These firms have expended the most time and resources to identify and investigate the case's potential claims, Fed. R. Civ. P. 23(g)(1)(A)(i), and they offer first-class experience in antitrust class actions, knowledge of the applicable law, and resources to represent the class. *Id.* at (ii)-(iv).

In addition, courts appointing leadership in this Circuit may consider "the relative strength of the firms in meeting the Rule 23 factors, the number of plaintiffs supporting an application, the order in which the plaintiffs filed, and the efficiency of each proposed

---

[7] The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

leadership structure." *DISH Network*, 2023 WL 11964095, at *1. Here, too, the proposed Interim Co-Lead Class Counsel, Liaison and Trial Counsel, and Plaintiffs' Steering Committee easily satisfy the Rule 23 factors, have universal support from the Direct Purchaser Plaintiffs, and filed the first case in this MDL.

**A.    The proposed firms easily meet the Rule 23(g) factors.**

**1.    The proposed firms have expended the most time and resources to identify and investigate the potential claims.**

As previously described, two of the proposed Co-Lead firms initiated this case by filing the original *Santarlas* complaint, which preceded all other related actions by a month or more. The original complaint filed by Hausfeld and Kesselman Brantly was based on more than 450 hours of attorney time consulting with experts and conducting proprietary research on this national market, without the benefit of any government investigation or media reports into the challenged anticompetitve conduct.

That investigation laid the groundwork for the twenty-three related actions that followed. Each follow-on action asserts a Sherman Act price-fixing conspiracy related to the defendants' use of MAP policies, names or identifies the same defendants as co-conspirators, and seeks to represent a class of archery products purchasers beginning in 2014, when the *Santarlas* complaint claims the conspiracy began.[8]

The remaining members of the proposed structure conducted independent investigations of their own beyond Hausfeld and Kesselman Brantly's efforts. They each added new allegations—and, in some cases, new defendants—to their respective

---

[8] *See* Compl., *Santarlas v. Hoyt Archery, Inc.*, ECF No. 1 ¶ 2, No. 25-CV-436 (D. Utah May 30, 2025).

complaints. Thus, together, these firms have done as much as any potential slate could to identify and investigate the potential claims. *See* Fed. R. Civ. P. 23(g)(1)(A)(i).

> ### 2. The proposed firms offer first-class experience in antitrust class actions, knowledge of the applicable law, and resources to represent the class.

As demonstrated below and as detailed in their respective resumes, attached as Exhibits B-J, the proposed firms are each premier antitrust and class action firms, well-versed in the form and content of this case. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii). Just as importantly, they have the collective resources needed to advance this complex case to its resolution. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).

Together, the four proposed Co-Lead firms have offices across the United States (and even internationally). They regularly prosecute major antitrust actions such as this one, involving multi-year commitments to large and complex litigation, against the largest and most sophisticated companies and counsel in the world. They also have the financial resources to sustain this case by, for example, retaining top economic experts to establish class certification and damages, and by partnering with the industry's best e-discovery experts and vendors. In similar cases, the proposed Co-Lead firms have successfully prosecuted complex class actions, investing tens of millions of dollars in attorney time and out-of-pocket costs without any guarantee of recoupment, for more than a decade. The Plaintiffs' Steering Committee bolsters these resources, adding a deeper bench of experienced litigators from across the United States, as befits an antitrust class action involving many sophisticated defendants.

The proposed four co-lead firms are further described here:

a)      **Hausfeld**

Hausfeld LLP is widely recognized as "one of – if not the – top Plaintiffs' antitrust firm in the U.S." (*Global Competition Review*). Since its founding in 2008, the firm has led more than 85 antitrust and complex class actions, winning landmark rulings, and recovering billions of dollars for classes against large institutional defendants. In 2024, for instance, Hausfeld won a nearly $15 billion antitrust jury verdict and judgment against the NFL, among if not the largest antitrust verdicts in history, currently on appeal. *Chambers & Partners* currently ranks Hausfeld in its top Band 1 for nationwide plaintiffs' antitrust firms—one of just four firms in the country—and *Legal 500* similarly ranks Hausfeld as a top five firm for plaintiff-side civil class actions.

The Hausfeld team is led by Gary I. Smith, Jr. and Jane I. Shin. Mr. Smith is an acclaimed antitrust litigator: the *Legal 500* has described him as an "outstanding antitrust lawyer" that is "creative and intellectually nimble," a "pleasure to work with," and one who "takes his professional and ethical obligations seriously." And Ms. Shin is a veteran of numerous multidistrict antitrust litigations, from developing the critical evidentiary record to trial preparation and settlement strategy. *See also* Ex. B (full Hausfeld resume).

b)      **Kesselman Brantly (KBS)**

Kesselman Brantly is a highly regarded antitrust boutique made up of accomplished lawyers with decades of antitrust experience litigating cases in both federal and state courts. The firm's attorneys have trial and appellate experience, and regularly counsel clients on antitrust issues, including Minimum Advertised Price policies at issue in this case. In addition to their known expertise in handling antitrust competitor cases,

KBS partners have worked on numerous class actions over the years and have been appointed lead or co-lead counsel in both federal and state courts. The firm is currently ranked by *Chambers & Partners* for its antitrust plaintiffs' practice, and it is regularly ranked in Best Lawyers and similar publications for its expertise in antitrust law.

The Kesselman Brantly team is led by David Kesselman, Amy Brantly, and Abiel Garcia. Mr. Kesselman, with more than 25 years of experience, is ranked by *Chambers and Partners* for his expertise in antitrust law. He has tried antitrust cases to verdict and served as an adjunct professor of antitrust law at Loyola Law School for 15 years. Ms. Brantly has decades of experience litigating cutting-edge antitrust issues, including *White v. NCAA*, one of the first athlete class cases against the NCAA that resulted in a significant settlement and a precursor to the Supreme Court's landmark decision in *NCAA v. Alston*. Mr. Garcia is a former antitrust Deputy Attorney General for the State of California who spent six years as an antitrust attorney at Gibson Dunn. *See also* Ex. C (full KBS resume).

### c)    DiCello Levitt

Headquartered in Chicago, DiCello Levitt is a national complex litigation and trial firm, with over 100 attorneys in eight offices. The firm has a well-respected antitrust practice comprising attorneys with decades of class action, government enforcement, and trial experience. The antitrust practice group and the firm's antitrust attorneys have garnered national and international recognition, including top rankings from Chambers & Partners, Benchmark Litigation, Lawdragon, and The Legal 500, and the firm's team of antitrust attorneys is regularly appointed lead counsel and has been recognized by courts for its commitment to providing opportunities to attorneys from historically

underrepresented groups.

The DiCello Levitt team is led by partners Greg Asciolla and Alexander Barnett. Mr. Asciolla is a former U.S. Department of Justice Antitrust Division attorney and has been recognized as an Antitrust MVP of the Year by *Law360*, as well as one of *Crain's New York Business* 2023 list of Notable LBTQIA+ Leaders. Mr. Barnett is a former president of the Committee to Support the Antitrust Laws (COSAL), the only organization in the United States dedicated to lobbying for strong antitrust laws and effective private enforcement, and has been recognized as one of *Lawdragon's 500 Leading Global Antitrust & Competition Lawyers. See also* Ex. D (full DiCello Levitt resume).

### d) Freed Kanner (FKLM)

FKLM, with offices in Chicago and Philadelphia, has a reputation as one of the most effective Plaintiffs' litigation firms in the nation, having secured billions of dollars in recoveries for the clients and classes. Its attorneys have been appointed to lead, executive, or steering committee roles in class action litigation throughout the United States resulting in significant recoveries, including two of the three largest civil antitrust settlements ever obtained in the Seventh Circuit. In recent years, FKLM received the American Antitrust Institute's (AAI) Award for Outstanding Antitrust Litigation Achievement in Private Law Practice for its role as Co-Lead Counsel in *In re Peanut Farmers Antitrust Litigation*, No. 19-cv-00463 (E.D. Va.) which settled for $102.75 million and for its role in *Cameron et al. v. Apple Inc.*, No. 19-cv-03074 (N.D. Cal.), an antitrust case brought on behalf of application developers that settled for $100 million. U.S. District Judge Raymond Jackson praised the firm's "effective and efficient prosecution" of the

*Peanut Farmers* case which led to "an excellent result for the Class," without the benefit of a government investigation.[9] *Chambers & Partners* USA recognizes FKLM as a "famous class action firm," consistently ranking it among the nation's top antitrust firms.

The FKLM team is led by partners Kimberly Justice and Matthew Ruan. Ms. Justice, a former federal antitrust prosecutor for the U.S. Department of Justice, is routinely appointed to lead complex cases where she has negotiated extensive settlements and has even first-chaired a class action trial to a favorable verdict. Mr. Ruan has extensive experience litigating complex commercial matters with a focus on antitrust issues, and has helped recover billions of dollars for a broad range of clients. *See also* Ex. E (full FKLM resume).

**B.    All Direct Purchaser Plaintiffs support the proposed structure.**

As an additional consideration for appointing leadership, "the number of plaintiffs supporting each application may be considered without resorting to a popularity contest." *DISH Network*, 2023 WL 11964095, at *2 (citing *In re Nelnet Servicing, LLC*, No. 22-cv-3181, 2023 WL 1108253, at *5 (D. Neb. Jan. 30, 2023)). Here, every Direct Purchaser Plaintiff supports the proposed leadership structure. This consensus reflects extensive cooperation between the plaintiffs and their counsel to organize themselves for success.

**C.    The proposed firms filed first.**

Finally, the order of filing also serves as "an objective basis for choosing among highly qualified counsel." *Kramer v. Alterra Mountain Co.*, No. 20-CV-01057, 2020 WL

---

[9] *In re Peanut Farmers Antitrust Litig.*, No. 19-cv-00463, 2021 WL 9494033, at *2 & 3 (E.D. Va. Aug. 10, 2021).

4429386, at *2 (D. Colo. July 31, 2020) (citing *Richey v. Ells*, No. 12-CV-02635, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel.")).

As explained above, Hausfeld and Kesselman Brantly were the first to file. And since no government enforcement action or media reporting preceded their investigation, their first-filed status does not simply reflect winning the "race" to file first, as sometimes occurs with antitrust class action complaints that "follow on" government cases.

Moreover, of the actions that followed the *Santarlas* complaint, many of the earlier filers are members of the proposed structure: Gustafson filed second, Lockridge filed third, Paul LLP filed fifth, and DiCello Levitt filed seventh.[10] Further, DiCello Levitt first moved the JPML to centralize these cases. *See Nelnet Servicing, LLC*, 2023 WL 1108253, at *4 (crediting "the first attorney group to file a motion to consolidate").

### D.    The proposed structure is most efficient.

Among the factors for appointing interim lead counsel, "[t]he most important is achieving efficiency and economy without jeopardizing fairness to the parties." *Ann. Manual for Complex Litig.* § 10.221 (4th ed.). Here, the proposed structure—with four Co-Leads, a single local counsel, and a four-firm Plaintiffs' Steering Committee—can fairly and most efficiently represent the proposed class.

Courts in this Circuit regularly acknowledge the value of a multi-firm lead counsel

---

[10] *See Babst v. Archery Trade Ass'n*, 25-CV-2721 (D. Minn. June 27, 2025) (Gustafson); *Janochoski v. Hoyt Archery, Inc.*, 25-CV-2788 (D. Minn. July 7, 2025) (Lockridge); *Dunkin v. Bowtech, LLC*, 25-CV-546 (W.D. Mo. July 15, 2025) (Paul LLP); *Butter v. Archery Trade Ass'n*, 25-CV-1004 (W.D. Pa. July 17, 2025) (DiCello Levitt).

structure, as well as liaison/trial counsel and multi-firm steering committees, where the nature of a complex case and the high number of defendants call for large-scale resources. *See, e.g.*, *In re Frontier Airlines Litig.*, No. 20-CV-1153, 2020 WL 9258441, at *3 (D. Colo. Dec. 16, 2020) (appointing multiple co-leads and liaison counsel); *In re Ethicon, Inc., Power Morcellator Prods. Liab. Litig.*, No. 15-MD-2652 (D. Kan. Nov. 19, 2015), Dkt. No. 10 (order appointing multiple co-leads, liaison counsel, and a multi-firm committee); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 18-CV-328, 2023 WL 356882, at *2 (D.N.M. Jan. 23, 2023) (appointing a multi-firm co-lead counsel structure).[11]

Such is the case here. With more than twenty-four total actions alleging a decade-long, nationwide antitrust conspiracy against more than a dozen defendants and many more unnamed co-conspirators, the proposed structure strikes a careful balance between the efficiencies of a nimble team prosecuting a case, against the value of multiple established law firms offering significant resources over time. The four proposed Co-Lead firms can steer this complex litigation for the "long haul," focusing on class certification, dispositive motions, and case management, while mustering the Plaintiffs' Steering Committee to assist with inevitability extensive document review, non-party discovery, and geographically dispersed depositions of defendants and non-parties. All the while, the Co-Lead firms can rely on their Liaison and Trial Counsel to provide expertise on this District's bench and bar, assist with administrative matters, and prepare for eventual trial by jury. *See Ann. Manual Complex Litig.* § 10.221 (4th ed.) (describing the roles of lead

---

[11] *See also, e.g.*, *In re Realpage, Inc., Rental Software Antitrust Litig. (No. II)*, ECF No. 278, 23-md-03071 (M.D. Tenn. June 13, 2023) (appointing three interim-co-lead firms, a liaison firm, and eight steering committee firms).

counsel, liaison counsel, trial counsel, and committees).

The proposed co-lead firms would delineate clear roles and assignments for the various counsel in this case and ensure that no duplicate work is conducted on behalf of the class. They would strictly enforce a Time & Expense Protocol, such as the example protocol attached as Exhibit K. And they would prevent any claims for unnecessary time and expenses to "read and review" filings, attend co-lead counsel calls, or otherwise churn resources without tangibly benefiting the class.

In sum, the leadership structure proposed here offers to the proposed class and to the Court a complete team that is ready to lead this case to trial with efficiency.

## IV.    CONCLUSION

For these reasons, the Direct Purchaser Plaintiffs respectfully request that the Court approve their proposed leadership structure.

Dated: November 13, 2025                    Respectfully submitted,

                                            _/s/ Eric Olson_____
                                            Eric Olson
                                            **Olson Grimsley Kawanabe**
                                            **Hinchcliff & Murray LLC**
                                            700 17th Street, Suite 1600
                                            Denver, CO 80202
                                            (303) 535-9151
                                            eolson@olsongrimsley.com

                                            *Proposed Liaison & Trial Counsel*
                                            *for Direct Purchaser Plaintiffs*[12]

---

[12] A signature page for the full Proposed Direct Purchaser Plaintiffs' Leadership Structure is attached as Exhibit L.

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2025 the foregoing document was filed with the Clerk of Court using the CM/ECF system.

*/s/ Eric Olson*