IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Philip A. Brimmer

| | |
|---|---|
| Civil Action No. 25-md-03160-PAB-TPO<br>MDL No. 3160<br><br>IN RE ARCHERY PRODUCTS<br>ANTITRUST LITIGATION | **DEFENDANTS' PRE-CONFERENCE STATEMENT OF THE CASE** |

The undersigned defendants ("Defendants") submit this statement pursuant to the Court's Preliminary Case Management Order (ECF No. 2 at 4–5) to state their current understanding of the critical factual, legal, and procedural issues of the case and anticipated motions to dismiss.[1]

This multidistrict litigation includes 24 actions naming 16 defendants drawn from across the archery supply chain and ancillary service providers. Defendants include manufacturers, distributors, national, regional and local retailers, the Archery Trade Association ("ATA"), and two software vendors. Plaintiffs, individuals seeking to represent classes of direct and indirect purchasers, allege a massive, eleven-year conspiracy spanning the entire industry to inflate prices of "Archery Products" by adopting and enforcing minimum advertised price ("MAP") policies—but without any alleged agreement on actual selling prices or even uniform MAP levels. Plaintiffs assert claims under Section 1 of the Sherman Act and, for indirect purchasers, various state laws.

1.  **Summary of Key Factual and Legal Issues**

    **Elements of a Section 1 claim.** Section 1 of the Sherman Act prohibits any "contract, combination . . . or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To establish

---

[1] One motion is pending in related federal proceedings: a motion to dismiss filed by defendant Mathews Archery, Inc. against the first-filed complaint, *Santarlas* (D. Utah). By stipulation of the parties, the response deadline for that motion was postponed and no opposition was filed. Defendants expect that the filing of a consolidated amended complaint will moot this motion.

1

liability, Plaintiffs must prove: (1) an agreement among economically independent actors; that (2) "unreasonably" restrains trade. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010). Whether a restraint is "unreasonable" depends on its nature. Certain restraints, such as naked price-fixing or market allocation between *horizontal* competitors, are considered *per se* (automatically) unlawful, while other types of restraints, including *vertical* restrictions (i.e., up or down the supply chain, even if related to price) are evaluated under the "rule of reason." *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87, 907 (2007). The rule of reason standard requires detailed analysis of the restraint in its full economic context, including whether the restraint has a "substantial anticompetitive effect" in the relevant market. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 540–41 (2018). If a plaintiff meets that burden, defendants can rebut with evidence of procompetitive justifications. The fact-finder must balance the net effect on competition. Here, Plaintiffs assert both *per se* and rule of reason theories.

**Minimum Advertised Price Policies**. To address Plaintiffs' allegations, it is useful to clarify what MAP policies are, and what they are not. A MAP policy is a unilateral, manufacturer-announced policy that prohibits downstream resellers from *advertising* the manufacturer's products below a specified price level. MAP policies do not restrict a retailer's independent discretion to set the final price it will actually *charge* its customers.[2] MAP policies are ubiquitous across industries and are often procompetitive because they protect brand value and encourage retailer investments in customer service. *See Holabird Sports Discounters v. Tennis Tutor, Inc.*, 993 F.2d 228, 1993 WL 147470, at *1 n.1 (4th Cir. May 7, 1993) (explaining that MAP policies

---

[2] MAP policies often apply to only a subset of a manufacturer's products and only certain forms of advertising.

2

can prevent free riding); *cf. Leegin*, 551 U.S. at 890 (absent some restraints on *intrabrand* competition, "the retail services that enhance interbrand competition might be underprovided").

Even under a MAP policy, resellers remain free to set the actual price of the products they sell. But if a reseller chooses to *advertise* products in a way that violates a MAP policy, the manufacturer may, in its sole discretion, impose consequences on that reseller—which can include warnings, suspension or termination of authorized status. The unilateral structure of MAP policies is no accident: they are designed to take advantage of the "*Colgate* doctrine"—the Supreme Court's rule that "[a] manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984) (citing *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)); *see also Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009) (stating the general rule that businesses are also "free to choose . . . the prices, terms, and conditions of that dealing"). In other words, Section 1 of the Sherman Act does not apply at all to a manufacturer's MAP policy, its unilateral enforcement, or a reseller's decision to comply.

**Plaintiffs' MAP allegations.** Plaintiffs allege (without supporting facts) that MAP policies across the archery industry were adopted, enforced, and complied with as the result of an unlawful conspiracy that supposedly began in 2014. Plaintiffs claim that this eleven-year conspiracy was facilitated by the ATA and encouraged by various industry participants through an assortment of online blog and forum posts, web articles, podcasts, and other public statements largely in the 2015–2019 timeframe. Many of these alleged statements were not made by any Defendant, and many Defendants are alleged to have done nothing with any specificity beyond being ATA members or holding positions on the ATA board of directors. Statements and actions by an

3

association cannot be imputed to individual members (even board members), *see Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1179 (10th Cir. 2019), and Plaintiffs need more than statements extolling the (legitimate and procompetitive) benefits of MAP policies to prove an unlawful "meeting of the minds" across *horizontal competitors* in the industry: between competing manufacturers, competing distributors, or competing retailers to act in concert.[3]

**Circumstantial evidence of conspiracy at the motion to dismiss and summary judgment stages.** The Supreme Court "insist[s] upon some specificity in pleading before allowing a potentially massive factual controversy to proceed" in antitrust cases. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Here, without any direct evidence of a sprawling conspiracy, Plaintiffs must plead facts showing circumstantial evidence of parallel conduct, together with "plus factors" that plausibly suggest the existence of an agreement, as opposed to independent or interdependent action by rational businesses. *See Llacua*, 930 F.3d at 1178–80; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015) (affirming dismissal of Section 1 claim against industry-wide MAP policies that alleged "facts that could just as easily suggest rational, legal business behavior . . . as they could suggest an illegal conspiracy"). At summary judgment, Plaintiffs need "evidence that tends to exclude the possibility that the alleged conspirators acted independently." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

**Information sharing.** Some of the complaints add a separate Section 1 claim for an alleged

---

[3] The two software provider defendants, NeuIntel and TrackStreet, simply provide software solutions to make customers' "back-office" price-tracking function more efficient. They do not make, sell, or set pricing for any Archery Products, and thus are in *neither* a horizontal nor vertical relationship with any other Defendants. *See Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1081–82 (9th Cir. 2025). Plaintiffs also do not (and cannot) allege they facilitated an exchange of the other defendants' non-public pricing information. Thus, they cannot fix prices or otherwise restrain trade for the sale of any Archery Products. *See id.* at 1076–77.

unlawful agreement to exchange competitively sensitive information. This standalone claim appears to be based on the launch of the "ATA Retail Business Tracker Survey," ATA's trade shows, and an "ATA Connect" portal that supposedly facilitated discussions among ATA's members. As with any Sherman Act Section 1 claim, Plaintiffs must prove that the alleged conduct, here the exchange of information, was pursuant to an agreement rather than independent actions based on rational self-interest. *In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 388813, at *3 (E.D. Pa. Feb. 3, 2025) (dismissing claim and noting that the "exchange of information . . . without an agreement is not itself a violation of the Sherman Act"). Plaintiffs also need to prove that any such agreement directly impaired competition in the relevant market. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978). Notably here, none of the information sharing claims plausibly allege sharing of data on *actual prices* between competitors.

**Market definition.** Plaintiffs allege that every type of archery-related product or accessory should be combined into a single, mass "Archery Products" market: bows, crossbows, arrows, arrowheads, quivers, targets, and other accessories. Product markets normally should include only "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1313 (10th Cir. 2017) (cleaned up). But most of these "Archery Products" are *complements*, not functional substitutes. Plaintiffs will need to show that "commercial realities" justify abandoning bedrock market definition principles here, *see Am. Express*, 585 U.S. at 544, 545 n.8, especially because "[g]rouping complementary goods into the same market" is "economic nonsense," Areeda & Hovenkamp, Antitrust Law § 565a (Sept. 2025).

**Class definition and antitrust standing.** All but two complaints purport to represent a

5

class of "direct purchasers," but they differ on what "direct" means—specifically, a direct purchase from *whom*? Under federal law, only the first "innocent" (non-conspirator) purchaser in the distribution chain may sue for damages under Section 1 of the Sherman Act. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977). Some of the complaints allege that *all* 2,500 ATA members joined an unlawful agreement, but ATA is a voluntary association and industry membership is not universal. How the "direct purchaser" class is defined may raise significant legal issues on standing in the first instance, and eventually, class certification. For example, an ill-defined putative "direct purchaser" class may sweep in: (1) purchasers who bought Archery Products from "innocent" resellers with no connection to the alleged conspiracy (thus lacking standing) and/or (2) a range of actual direct purchasers at the distribution, retail, and end-consumer levels whose economic interests and claimed injuries would differ materially (thus being atypical of class claims).

Two complaints allege a separate class of "indirect" purchasers.[4] Indirect purchasers lack standing to sue for money damages under federal antitrust law, and so these plaintiffs instead bring claims under the antitrust, consumer protection, or deceptive trade practice statutes of 33 states and the District of Columbia. The two plaintiffs bringing these claims allege that they purchased Archery Products in at most three out of those 34 jurisdictions, raising likely threshold issues of standing, adequacy of representation and typicality. Many state laws also differ in meaningful respects from the Sherman Act and will need to be separately addressed in any dispositive motions.

Defendants dispute that Plaintiffs can certify *any* proposed class under Rule 23 given the above issues and the likely heterogeneity in MAP policies and other practices across the archery

---

[4] These are *Montpetit* (W.D. Wis.) and *Tapia* (W.D. Tex.). The *Tapia* complaint was just filed on November 10, 2025, and Defendants expect it will be consolidated into the current MDL.

6

industry over more than 11 years. Both direct and indirect purchaser Plaintiffs will need to explain how this class structure satisfies the ascertainability, adequacy of representation, and typicality requirements of Rule 23, and how common issues could still predominate with these potentially critical factual and legal issues driving a wedge between segments of the class(es).

**Anticompetitive effects and damages.** Even if Plaintiffs succeed in demonstrating the existence of an industry-wide conspiracy to enact and enforce MAP policies, they would still need to show—using proof that is common to the class—that any such restraint caused anticompetitive effects in the relevant market (under a rule of reason theory) and prove damages to the class(es) to a reasonable certainty (under any theory). Plaintiffs allege that retail prices for Archery Products were inflated as a result of MAP policies, which will need to be proven through economic expert analysis, supported by reliable evidence, establishing a direct causal relationship between *coordinated* (not unilateral) MAP policies and alleged increases in retail prices—and distinct from other factors like inflation or increasing market demand. These are complex economic questions.

**Statute of limitations.** Plaintiffs' own allegations of the existence of a conspiracy (which Defendants deny) are based on public statements and actions between 2015 and 2019, well outside the Sherman Act's four-year statute of limitations. *See* 15 U.S.C. § 15b. Defendants expect to challenge Plaintiffs' assertion of fraudulent concealment as a basis for tolling of the four-year limitations period, including through motions to dismiss.[5]

---

[5]  Depending on the specific parties and allegations included in any consolidated amended complaint(s), some Defendants may also raise personal jurisdiction, arbitration-related defenses, or other party-specific issues in initial motions to dismiss. Defendants also reserve all rights to move to compel arbitration of any absent class members' claims if a class is certified and those members are (1) identifiable and (2) subject to the Court's jurisdiction.

7

### 2. Timing of Discovery and Defendants' Intent to Request a Stay

Defendants intend to seek a temporary stay of discovery pending resolution of motions to dismiss any consolidated amended complaints. As the foregoing summary suggests, those motions will present case-dispositive challenges on threshold issues: if granted, discovery would be unnecessary; if the pleadings are narrowed, discovery can be tailored to the surviving claims and parties.[6] Defendants' request will argue that all relevant factors favor a modest stay within the Court's broad discretion, as detailed below. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:05-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

- **Plaintiffs' interests**: Plaintiffs will not be unduly prejudiced by a temporary stay. They allege conduct dating back to 2014 and themselves propose a nearly two-year fact discovery period and nearly three years to summary judgment. Defendants also have preservation protocols and litigation holds in place, so there is little urgency and little risk from a short delay. *See Adamson v. Volkswagen Grp. of Am., Inc.*, No. 22-cv-00740-CMA-MDB, 2022 WL 4767573, at *3 (D. Colo. Oct. 3, 2022) (finding no significant effect to plaintiff from a temporary stay).

- **Defendants' burden and interests of non-parties**: On the other hand, the burden on Defendants and non-parties absent a stay would be substantial. The expense of "antitrust discovery" is well documented, *see Twombly*, 550 U.S. at 558, and Plaintiffs' theory that the ATA's *2,500 members* joined an eleven-year "cartel" to inflate prices through the adoption and enforcement of MAP policies threatens to pull not only Defendants into expansive discovery, but scores of non-parties as well. The complaints also indicate that Plaintiffs intend

---

[6] *See Am. Cricket Premier League, LLC v. USA Cricket*, No. 19-cv-01521-WJM-KMT, 2019 WL 13195402, at *2 (D. Colo. Nov. 15, 2019) (finding that "a stay may be appropriate if the resolution of a preliminary motion may dispose of the entire action").

to probe years of internal marketing and pricing policies, communications, and trade association events where MAP policies may have been discussed—standard fare for lawful trade association activity. This would require massive data and ESI collections and custodial reviews by Defendants and non-parties alike over an eleven-year period.

- **<u>Judicial economy and the public interest</u>**: A brief stay conserves resources by postponing inevitable discovery disputes until the Court knows which claims, parties, and issues—if any—will proceed. Consistent with that principle, courts managing MDL antitrust cases regularly limit discovery pending rulings on dispositive motions.[7]

Finally, to preserve momentum on case management while dispositive motions are pending, Defendants have offered to take targeted steps forward, such as conferring on and submitting a proposed protective order and ESI protocol and promptly exchanging initial disclosure narratives (without waiving any jurisdictional defenses) once the consolidated amended complaints are filed. Defendants propose that the Court set a briefing schedule to address Defendants' request for a stay after Plaintiffs file their consolidated amended complaint(s).

### 3. Defendants' Proposal for Initial Phase of the Schedule

Defendants have met and conferred with Plaintiffs' proposed leadership slate regarding the case schedule and will continue those discussions in advance of the November 20 hearing. For the initial phase of the case, Defendants propose the following deadlines:

- <u>Plaintiffs to file consolidated amended complaint(s)</u>: December 19, 2025

---

[7] *See, e.g.*, *In re Granulated Sugar Antitrust Litig.*, No. 0:24-md-3110 (D. Minn. Nov. 14, 2024), ECF No. 265 at 3 (discovery stay until dispositive motion ruling); *In re Shale Oil Antitrust Litig.*, No. 1:24-md-3119 (D.N.M. Dec. 20, 2024), ECF No. 82 (discovery limited to initial disclosures and discovery protocols); *In re GoodRx and Pharmacy Benefit Manager Antitrust Litig. (No. II)*, No. 1:25-md-3148 (D.R.I. Aug. 1, 2025), ECF No. 45 (similar).

9

- <u>Defendants to move to dismiss</u>: February 20, 2026

- <u>Plaintiffs to oppose motions to dismiss</u>: April 20, 2026

- <u>Defendants to file replies in support of motions to dismiss</u>: May 22, 2026

- <u>Deadline to answer for Defendants who filed motions to dismiss</u>: 30 days after any ruling denying Defendants' motions to dismiss

Plaintiffs have also identified interim events and deadlines for fact discovery, which they seek to commence immediately upon filing of their consolidated amended complaint(s). While Defendants are generally aligned with Plaintiffs' proposed *phasing* of fact discovery (subject to potential revisions), discovery should be stayed and any specific fact-discovery deadlines deferred until after the Court's ruling on motions to dismiss, as detailed above.

With respect to class certification, expert disclosures, and summary judgment, including the sequencing of those case events, Defendants submit that these issues are premature. Even under Plaintiffs' proposed schedule, that phase would not begin for at least two years. Defendants will be prepared to discuss those topics—after conferring with their clients—at the appropriate time.

Dated: November 13, 2025

Respectfully submitted,

/s/ *Daniel E. Laytin*
Daniel E. Laytin
Christa C. Cottrell
Brendan E. Ryan
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Phone: (312) 862-2000
dlaytin@kirkland.com
ccottrell@kirkland.com
brendan.ryan@kirkland.com
*Attorneys for Defendant Dick's Sporting Goods, Inc.*

/s/ *Bentley J. Tolk*
Terry E. Welch
Bentley J. Tolk
Sean M. Sigillito
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Phone: (801) 532-7840
twelch@parrbrown.com
btolk@parrbrown.com
ssigillito@parrbrown.com
*Attorneys for Defendant Archery Trade Association, Inc.*

/s/ *Wendy Arends*
Wendy Arends
HUSCH BLACKWELL LLP
33 East Main Street, Suite 300
Madison, WI 53703
Phone: (608) 258-7382
Fax: (608) 258-7138
wendy.arends@huschblackwell.com

Kamron T.M. Hasan
HUSCH BLACKWELL LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
Phone: (402) 964-5000
Fax: (402) 964-5050
kamron.hasan@huschblackwell.com
*Attorneys for Defendant Bowtech, LLC*

/s/ *Anna Rathbun*
Anna Rathbun
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Phone: (202) 637-2200
Matthew.Piehl@lw.com
Anna.Rathbun@lw.com

Christopher S. Yates
Brendan McShane
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 391-0600
Chris.Yates@lw.com
Brendan.McShane@lw.com
*Attorneys for Defendants BPS Direct, LLC and Cabela's LLC*

/s/ *Elizabeth M. Froehlke*
Elizabeth M. Froehlke
BERG HILL GREENLEAF RUSCITTI LLP
1712 Pearl St.
Boulder, CO 80302
Phone: (303) 402-1600
emf@bhgrlaw.com
*Attorney for Defendant Hamskea Archery Solutions, LLC*

11

/s/ *Michael A. Lindsay*
Michael A. Lindsay
Jaime Stilson
DORSEY & WHITNEY LLP
50 South Sixth Street Suite 1500
Minneapolis, MN 55402-1498
Phone: (612) 340-2600
lindsay.michael@dorsey.com
stilson.jaime@dorsey.com

Brett Foster
DORSEY & WHITNEY LLP
111 South Main Street, Suite 2100
Salt Lake City, UT 84111-2176
Phone: (801) 933-7360
foster.brett@dorsey.com

Steven Weingold
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202
Phone: (303) 629-3400
weingold.steven@dorsey.com
*Attorneys for Defendant Hoyt Archery, Inc.*

/s/ *John J. Michels Jr.*
John J. Michels Jr.
O'HAGAN MEYER PLLC
1331 17th Street, Suite 350
Denver, CO 80202
Phone: (303) 652-5871
jmichels@ohaganmeyer.com
*Attorney for Defendant Hunter's MFG. Co., Inc. d/b/a Tenpoint Crossbow Technologies*

/s/ *Jeremy J. Stewart*
Jeremy J. Stewart
Amanda Blain
Alex Bevans
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Salt Lake City, UT 84101
Phone: (801) 257-1865
jjstewart@swlaw.com
ablain@swlaw.com
abevans@swlaw.com
*Attorneys for Defendant Jay's Sporting Goods, Inc.*

/s/ *Eileen Monaghan Ficaro*
Eileen Monaghan Ficaro
Tad A. Devlin
KAUFMAN DOLOWICH LLP
One Liberty Place
1650 Market Street, Suite 4800
Philadelphia, PA 19103
Phone: (267) 841-5908
eficaro@kaufmandolowich.com
tdevlin@kaufmandolowich.com
*Attorneys for Defendant Kinsey's Archery Products, Inc. d/b/a Kinsey's Outdoors*

/s/ *Erik T. Koons*
Erik T. Koons
Thomas E. Carter
Frances Jennings
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
Phone: (202) 639-7700
erik.koons@bakerbotts.com
tom.carter@bakerbotts.com
fran.jennings@bakerbotts.com
*Attorneys for Defendant Mathews Archery, Inc.*

/s/ *William M. Katz, Jr.*
William M. Katz, Jr.
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Phone: (214) 665-3600
Bill.Katz@gtlaw.com
*Attorney for Defendant Lancaster Archery Supply, Inc.*

Stacy A. Carpenter
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO 80202
Phone: (303) 572-6500
Stacy.carpenter@gtlaw.com
*Attorney for Defendant Lancaster Archery Supply, Inc.*

/s/ *Derek A. Sutton*
Morgan T. Nickerson
Michael R. Murphy
K&L GATES LLP
1 Congress Street Suite 2900
Boston, Massachusetts 02114
Phone: (617) 261-3134
morgan.nickerson@klgates.com
michael.r.murphy@klgates.com

Derek A. Sutton
K&L GATES LLP
301 Hillsborough Street, Suite 1200
Raleigh, North Carolina 27603
Phone: (919) 743-7331
derek.sutton@klgates.com
*Attorneys for Defendants Neuintel LLC d/b/a PriceSpider f/k/a ORIS Intelligence and TrackStreet, Inc.*

13

**CERTIFICATE OF SERVICE**

 I hereby certify that on November 13, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Daniel E. Laytin*
