**APPENDIX A – DEFENDANT-SPECIFIC ARGUMENTS UNDER RULE 12(b)(6)**

| Defendant | Arguments |
|---|---|
| ***Manufacturers*** | |
| **Bear Archery** | None of the over two dozen lawsuits consolidated into this MDL alleges unlawful conduct by Bear or name Bear as a defendant. Nor do the Complaints contain factual allegations that plausibly implicate Bear in unlawful conduct. The Complaints merely allege that Bear:<br>1. "was a member of the ATA with a representative on its Board of Directors" in many years since 2014 (DPPC ¶¶ 53, 86; IPPC ¶¶ 10, 47);<br>2. "sold Archery Products subject to a MAP" (DPPC ¶ 53; IPPC ¶ 10); and<br>3. "engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States" (*Id.*).<br>These nominal allegations fall well short of plausibly alleging an antitrust conspiracy against Bear. They amount to nothing more than: (a) an allegation of lawful conduct and (b) unsupported legal conclusions not entitled to a presumption of truth (*e.g.,* that Bear "engaged in the agreement to fix, raise, maintain, or stabilize prices"). *See id.* In the absence of substantive allegations to support Plaintiffs' conclusory assertions that Bear "engaged in an agreement to fix, raise, maintained o stabilize prices[,]" Plaintiffs' claims necessarily fail. *Id.* |
| **Bowtech, LLC** | Bowtech is a manufacturer of American-made bows and prides itself on its innovative, high-quality products, and superior customer service. Bowtech is referenced a scant *three* times in the DPPC, and only twice in the IPPC. In each of their references to Bowtech, DPPs and IPPs allege only lawful conduct and conclusory assertions that are insufficient to state a claim that Bowtech participated in an unlawful conspiracy. In sum:<br>1. The Complaints list Bowtech as a defendant, allege Bowtech was a member of the ATA and sold various Archery Products subject to a MAP policy, and offer the conclusory assertion that Bowtech "engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States" (DPPC ¶ 50; IPPC ¶ 7);<br>2. The Complaints include a chart asserting that Bowtech employees David Fee, followed by Scott Henrickson, served on the ATA board of directors for three years in 2014, 2017, and 2018 (DPPC ¶ 86; IPPC ¶ 47); and<br>3. The DPP's Complaint asserts that Bowtech introduced a "new" MAP policy in 2018, citing the MAP policy's *lawful* enforcement mechanism for violations, including that "[t]here is not a warning on MAP violations." |

| Defendant | Arguments |
|---|---|
| | DPPC ¶ 161.[1]<br>4. Neither Complaint alleges that Bowtech engaged in any communication related to the adoption of MAP policies.<br><br>Trade association membership (and related board service) is lawful, commonplace in every industry, and procompetitive, as is selling high-quality, innovative products pursuant to a manufacturer's unilaterally-implemented and enforced MAP policy. None of this rises to the level necessary to allege a conspiracy that unreasonably restrains trade. |
| **Easton Technical Products, Inc.** | None of the 27 pre-consolidation complaints named Easton as a defendant, and the consolidated amended complaints do not plausibly allege that Easton engaged in unlawful conduct. Each complaint barely mentions Easton:<br><br>1. DPP Plaintiff Janochoski purchased "one or more Archery Products . . . including though not limited to, arrows manufactured by Defendant Easton" (DPPC ¶ 40).<br>2. Both Complaints list Easton as a defendant, allege Easton was a member of ATA and sold Archery Products subject to a MAP policy, and assert that Easton "engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States" (DPPC ¶ 55; IPPC ¶ 13).<br>3. Both Complaints allege that Easton employee Aaron Lucky served on the ATA board of directors. DPPC ¶ 86; IPPC ¶ 47. The Complaints do not allege that Easton had a representative on the board "at all relevant times"—Mr. Lucky did not join the board until 2022.<br>4. Neither complaint alleges that Easton engaged in any communication related to the adoption of MAP policies or that Easton adopted a MAP policy during the conspiracy period.[2]<br><br>These allegations are insufficient. *First*, the fact that a plaintiff purchases a lawfully manufactured product in the stream of commerce says nothing about the existence, much less the plausibility, of a conspiracy or Easton's alleged participation. *Second*, trade association membership and board service for a trade association are lawful. *Third*, Easton's adoption and use of a MAP policy is not grounds to state a claim against Easton, particularly where |

[1] The allegation it is a "new" policy indicates it was unilaterally introduced and implemented by Bowtech in 2018.

[2] The "ArcheryTalk" forum on which Plaintiffs rely indicates that Easton had a MAP policy as early as December 2012—well before the start of Plaintiffs' alleged conspiracy period. Comment, mtn3531 (Dec. 19, 2012), *on* D. Short, *Prime wants to sell bows, so why????*, ArcheryTalk (Dec. 14, 2012), https://www.archerytalk.com/posts/1066044908/ (discussing Easton MAP pricing).

| Defendant | Arguments |
|---|---|
| | Plaintiffs do not allege the timing or terms of Easton's policy, let alone that it was the product of agreement. |
| **Hamskea Archery Solutions LLC** | Hamskea is a small Colorado manufacturer of archery accessories, not a market mover, and the Complaints offer only a few bare, defendant-specific assertions that are either lawful on their face or conclusory.<br><br>DPPs allege that Hamskea is a Colorado LLC headquartered in Frederick, Colorado; that it was an ATA member; that it "sold Archery Products subject to a MAP"; and then recite the legal conclusion that Hamskea "engaged in the agreement to fix, raise, maintain, or stabilize prices." DPPC ¶ 47. The IPPC does not reference Hamskea.<br><br>These allegations merely allege lawful conduct, including trade-association membership and the existence of a manufacturer's unilateral MAP policy. Similarly, the allegation that a Plaintiff purchased an Archery Product "manufactured by Defendant Hamskea Archery Solutions through Defendant Lancaster Archery Supply," at most shows a sale into commerce—not collusion, agreement, or concerted enforcement conduct. DPPC ¶ 45. The claims against Hamskea should be dismissed. |
| **Hoyt Archery, Inc.** | The Complaints plead no facts connecting Hoyt to an unlawful agreement.<br><br>1. DPP Eichman purchased "one or more Archery Products … manufactured by Defendant Hoyt" (DPPC ¶ 42).<br>2. Both Complaints (a) list Hoyt as a defendant, allege that Hoyt was a member of ATA and sold Archery Products subject to a MAP policy, and assert that Hoyt "engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States" (DPPC ¶ 49; IPPC ¶ 6); (b) allege that Hoyt employees Tom Driffill, followed by Randy Walk, served on the ATA board of directors (DPPC ¶ 86; IPPC ¶ 47); and (c) allege Hoyt provided meeting space for an ATA Board meeting in July 2017, and that at this meeting, the ATA Board agreed to admit two retailer trade associations as members (DPPC ¶ 134; IPPC ¶ 91).<br>3. Neither complaint alleges that Hoyt engaged in any communication related to the adoption of MAP policies or that Hoyt adopted a MAP policy during the conspiracy period.[3] |

[3] The "ArcheryTalk" forum on which Plaintiffs rely indicates that Hoyt had a MAP policy as early as October 2009—well before the start of Plaintiffs' alleged conspiracy period. Comment, Rolo (Oct. 20, 2009), *on* rutmaster, *2010 hoyt prices*, ArcheryTalk (Oct. 19, 2009), https://www.archerytalk.com/posts/1055913072/ (discussing Hoyt MAP pricing).

<table>
<tr><th>Defendant</th><th>Arguments</th></tr>
<tr><td></td><td>These allegations are insufficient. First, a plaintiff's purchasing a Hoyt product says nothing about the plausibility or even existence of a conspiracy or Hoyt's alleged participation. Second, trade association membership and board service are lawful, as is hosting a meeting where a lawful decision was made. Third, Hoyt's adoption and use of a MAP policy is not grounds to state a claim, particularly where Plaintiffs do not allege the timing or terms of Hoyt's policy, let alone that it was the product of agreement.</td></tr>
<tr><td>Mathews Archery, Inc.</td><td>Contrary to Plaintiffs' improperly group-pled allegations (see DPPC ¶ 8; IPPC ¶ 60), Mathews developed its MAP well in advance of any alleged coordination and absent any influence from the ATA. But Plaintiffs are not entitled to proceed to discovery of these facts because they allege only lawful behavior or bare legal conclusions against Mathews. Each Complaint mentions Mathews only twice, alleging that:<br>1. Mathews was "[a]t all relevant times . . . a member of the ATA with a representative on its Board of Directors" and "sold Archery Products subject to a MAP," with a conclusory assertion that Mathews "engaged in" a price-fixing agreement (DPPC ¶ 51; IPPC ¶ 8); and<br>2. two Mathews employees participated on the ATA board from 2017–2024 (DPPC ¶ 86; IPPC ¶ 47).<br>Despite being on notice of identical arguments from Mathews' prior motion to dismiss (see Santarlas v. Bowtech Inc., No. 1:25-cv-03620, ECF 31 (D. Colo. July 10, 2025)), Plaintiffs still allege no statements, discussions, agreements, or MAP specifics—not a single allegation vis-à-vis Mathews was added. All claims against Mathews should be dismissed with prejudice. See Sayed v. Broman, 639 F. App'x 698, 701 (10th Cir. 2016) (affirming dismissal with prejudice where plaintiff "was afforded an opportunity to amend, which proved futile because he did not add any new facts").</td></tr>
<tr><td>Precision Shooting Equipment, LLC</td><td>Precision Shooting Equipment, LLC ("LLC"), was formed in February 2023 and is owned by Heritage Outdoor Group, LLC ("Heritage"). On February 15, 2023, LLC executed an asset acquisition for some of Precision Shooting Equipment, Inc.'s ("INC") inventory, physical assets, and office and equipment leases (the "Asset Transaction"). No liabilities incurred by INC, other than some ongoing rent obligations, were part of the Asset Transaction. LLC was not in existence during the relevant time period in the Complaint, nor was or has LLC or its members ever been associated with ATA. Heritage and LLC have no relation to INC.<br>Plaintiffs' allegations are directed at INC's actions and personnel, which are/were members of ATA. LLC was and is not a member or connected with</td></tr>
</table>

<table>
<tr><th>Defendant</th><th>Arguments</th></tr>
<tr><td></td><td>ATA, nor is David Kronengold connected in any way with Heritage or LLC.<br><br>LLC's appearance is not a response to the allegations against INC, nor does its response constitute any acceptance of service by the entity INC. Because only two of the Plaintiffs' Complaints allege LLC or Heritage in any capacity, insufficient allegations have been pleaded to state a claim to relief against LLC and/or Heritage, requiring dismissal under Rule 12.</td></tr>
<tr><td>Tomorrow's Resources Unlimited, Inc.</td><td>TRU is a small, family-owned supplier of archery equipment. Aside from alleging that TRU participated in the ATA, which is lawful and procompetitive conduct, the Complaints plead no facts beyond conclusory allegations that plausibly connect TRU to any unlawful conduct. As to TRU, the Complaints only allege that:<br><br>1. TRU's representative explained how MAP policies may work and TRU's belief in the benefits of MAP policies (DPPC ¶¶ 5, 123, 195);<br>2. TRU's representative was a member of the ATA Board of Directors from 2014-2021 (DPPC ¶ 86; IPPC ¶ 47);<br>3. TRU enforces its MAP policies, informs industry participants of enforcement of its MAP policies, and has penalties for violations of its MAP policies (DPPC ¶¶ 95, 160; IPPC ¶¶ 74-75); and<br>4. TRU attributes success to its MAP policies, and discusses its MAP policies with retailers and distributors (DPPC ¶ 151).<br><br>These allegations do not state an antitrust conspiracy claim and do not justify dragging a small, family-owned business into dozens of nationwide class-actions and this antitrust MDL.</td></tr>
<tr><td colspan="2">Distributors</td></tr>
<tr><td>Kinsey's Archery Products, Inc. d/b/a Kinsey's Outdoors</td><td>Plaintiffs fail to state any unlawful conduct on the part of Kinsey's. Pulling from isolated statements published years apart, Plaintiffs allege only that:<br><br>1. Kinsey's adopted a MAP policy (DPPC ¶ 117; IPPC ¶ 72);<br>2. Kinsey's expressed support for and discussed enforcement of MAP Policies (DPPC ¶¶ 21, 117, 118, 159; IPPC ¶ 72, 73, 110, 115); and<br>3. Kinsey's was a member of the ATA with a representative on the ATA Board of Directors (DPPC ¶¶ 62, 86; IPPC ¶ 18, 47).<br><br>Plaintiffs do not allege the terms of Kinsey's MAP policy or that it was the product of any agreement. Plaintiffs do no more than state procompetitive, lawful conduct on the part of Kinsey's.</td></tr>
</table>

<table>
<tr><th>Defendant</th><th>Arguments</th></tr>
<tr><td>Lancaster Archery Supply, Inc.</td><td>The Complaints plead no facts connecting Lancaster to any unlawful agreement and mention Lancaster only a few times in limited contexts:<br>1. while listing the ten DPPs and alleging that five of them bought Archery Products from Lancaster that were purportedly “subject to a MAP” (DPPC ¶¶ 37, 42, 44-46);<br>2. while listing the Defendants and alleging in a conclusory manner that Lancaster (a) was “[a]t all relevant times … a member of the ATA with a representative on its Board of Directors,” (b) “sold Archery Products subject to a MAP;”[4] and (c) “engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States” (DPPC ¶ 63; IPPC ¶ 19); and<br>3. in charts alleging (a) one Lancaster employee served on the ATA’s board of directors from 2014–2019 (DPPC ¶ 86; IPPC ¶ 47), and (b) a different Lancaster employee served on the ATA’s retail council from 2021–2024 (DPPC ¶ 90; IPPC ¶ 51).<br>These allegations either describe lawful behavior or are bare legal conclusions. Although some DPPs allegedly purchased Archery Products from Lancaster subject to a MAP, Plaintiffs provide no specifics about those MAPs. All claims against Lancaster should be dismissed.</td></tr>
<tr><td colspan="2">Retailers</td></tr>
<tr><td>BPS Direct, LLC (and Cabela’s LLC)</td><td>The Complaints do not connect Bass Pro or Cabela’s to any conspiratorial agreement. They offer only three allegations specific to these entities:<br>1. Bass Pro and Cabela’s representatives joined the ATA Board in early 2014, the same calendar year that ATA’s President sent a message to ATA members advocating for MAPs (DPPC ¶¶ 111-12; IPPC ¶ 64);<br>2. A 2015 retirement article quote calling Cabela’s Tom Gallagher and Bass Pro’s Dean Snelson “cohort[s] in crime” (DPPC ¶ 113); and<br>3. A 2017 article reported that Ryan Shutts, Cabela’s then-merchandising director, “thinks manufacturers should create MAP policies, and retailers should honor them,” and “said every business in the industry must work together as a group to be productive and profitable, which includes strong MAP policies and procedures.” (IPPC ¶ 96; DPPC ¶¶ 22, 89).<br>These allegations attempt to transform lawful conduct into a conspiracy. The “cohorts in crime” phrase takes out of context a remark about Mr. Gallagher’s friendship; it has nothing to do with MAPs. And there is nothing improper</td></tr>
</table>

[4] It is not correct that Lancaster had a representative on the ATA board of directors “[a]t all relevant times;” Lancaster’s representative served only from 2014–2019.

<table>
<tr><th>Defendant</th><th>Arguments</th></tr>
<tr><td></td><td>about Mr. Shutts offering opinions on MAPs generally. Plaintiffs list separate pieces of that article to make it appear that Mr. Shutts was instructing ATA members to adopt and enforce MAP policies. Compare DPPC ¶ 89, with Carollo v. Bowtech, LLC et al., 4:25-cv-006310SRB, ECF No. 1 (W.D. Mo. Aug. 12, 2025). The quotes do not support a plausible conspiracy claim.</td></tr>
<tr><td>Jay's Outdoors LLC</td><td>Jay's is a small, family-owned outdoor retailer with two stores located in northern Michigan. See DPPC ¶ 59; IPPC ¶ 17. The Complaints plead no facts plausibly connecting Jay's to a conspiracy or other unlawful conduct. The Complaints quote two statements allegedly made by Mark Copeland, a Jay's store manager, in his capacity as a leader of the ATA's Retail Council:<br>1. a May 2016 statement encouraging participation in the ATA's Retail Council to create "an active and engaged platform for retailers," (DPPC ¶¶ 87, 131; IPPC ¶ 89); and<br>2. an undated statement encouraging retailers to participate in the ATA's trade show (DPPC ¶ 93).<br>Those alleged statements facially exhibit procompetitive, lawful conduct like trade association participation, that do not state a claim against Jay's.</td></tr>
<tr><td>Scheels All Sports, Inc.</td><td>The Complaints contain no factual allegations that, even if taken as true, could establish that Scheels entered into an unlawful agreement. Plaintiffs named Scheels for the first time in the December 19, 2025 consolidated Complaints, and each pleading mentions Scheels only three times:<br>1. in a list of Defendants that alleges Scheels' address and that it was "[a]t all relevant times … a member of the ATA" and "sold Archery Products subject to a MAP," with a conclusory assertion that Scheels "engaged in the agreement to fix, raise, maintain, or stabilize prices of Archery Products sold in the United States" (DPPC ¶ 60; IPPC ¶ 20);<br>2. in a chart alleging one Scheels employee's participation on the ATA board from 2017–2024 (DPPC ¶ 86; IPPC ¶ 47); and<br>3. in a chart alleging the same Scheels employee's participation on the ATA retail council from 2017–2024 (DPPC ¶ 90; IPPC ¶ 51).<br>These allegations do not state a claim against Scheels. The allegation that Scheels engaged in an unlawful agreement is conclusory and not entitled to any weight. The other allegations only describe lawful conduct. All claims against Scheels should be dismissed.</td></tr>
</table>

## APPENDIX B – STATUTES OF LIMITATIONS (SOL)

| State | Antitrust SOL | Consumer Protection SOL |
|---|---|---|
| AL | N/A | 1 Year<br>w/ 4-Year Statute of Repose<br>ALA. CODE § 8-19-14 |
| AR | N/A | 5 Years<br>ARK. CODE § 4-88-115 |
| AZ | 4 Years<br>ARIZ. REV. STAT. § 44-1410(b) | N/A |
| CA | 4 Years<br>CAL. BUS. & PROF. CODE § 16750.1 | 4 Years<br>CAL. BUS. & PROF. CODE § 17208 |
| CO | N/A | 3 Years<br>COLO. REV. STAT. § 6-1-115 |
| DC | 4 Years<br>D.C. CODE § 28-4511(b) | 3 Years<br>D.C. CODE § 12-301(8); *see Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 323 (D.C. 2008) |
| FL | N/A | 4 Years<br>FLA. STAT. § 95.11(3)(e) |
| HI | 4 Years<br>HAW. REV. STAT. § 480-24 | 4 Years<br>HAW. REV. STAT. § 480-24 |
| ID | N/A | 2 Years<br>IDAHO CODE ANN. § 48-619 |
| IL | 4 Years<br>740 ILL. COMP. STAT. ANN. § 10/7(2) | 3 Years<br>815 ILL. COMP. STAT. ANN. § 505/10a(a) |
| IA | 4 Years<br>IOWA CODE ANN. § 553.16(2) | N/A |
| KS | 3 Years<br>*O'Brien v. Leegin Creative Leather Prods., Inc.*, 277 P.3d 1062, 1086 (Kan. 2012) | 3 Years<br>KAN. STAT. ANN. 60-512(2) |
| ME | 6 Years<br>ME. REV. STAT. ANN. tit. 14, § 752 | 6 Years<br>ME. REV. STAT. ANN. tit. 14, § 752 |
| MA | N/A | 4 Years<br>MASS. GEN. LAWS ANN. CH. 260, § 5A |
| MI | 4 Years<br>MICH. COMP. LAWS ANN. § 445.781(2) | N/A |
| MN | 4 Years<br>MINN. STAT. ANN. § 325D.64(1) | 6 Years<br>MINN. STAT. ANN. § 541.05(1)(2) |
| MS | 3 Years<br>MISS. CODE ANN. § 15-1-49(1) | N/A |
| MO | N/A | 5 Years<br>MO. ANN. STAT. § 516.120 |
| MT | N/A | 2 Years<br>MONT. CODE ANN. § 27-2-211(1)(c) |

| State | Antitrust SOL | Consumer Protection SOL |
|---|---|---|
| NE | 4 Years<br>NEB. REV. STAT. § 25-206 | 4 Years<br>NEB. REV. STAT. § 59-1612 |
| NV | 4 Years<br>NEV. REV. STAT. § 598A.220(2) | 4 Years<br>NEV. REV. STAT. § 11.190(2)(D) |
| NH | 4 Years<br>N.H. REV. STAT. § 356:12(II) | N/A |
| NM | 4 Years<br>N.M. STAT. ANN. § 57-1-12(B) | 4 Years<br>N.M. STAT. ANN. § 37-1-4 |
| NY | 4 Years<br>N.Y. GEN. BUS. LAW § 340(5) | 3 Years<br>N.Y. C.P.L.R 214(2) |
| NC | 4 Years<br>N.C. GEN. STAT. ANN. § 75-16.2 | 4 Years<br>N.C. GEN. STAT. ANN. § 75-16.2 |
| ND | 4 Years<br>N.D. CENT. CODE § 51-08.1-10(2) | 4 Years<br>N.D. CENT. CODE § 51-15-12 |
| OR | 4 Years<br>OR. REV. STAT. ANN. § 646.800(2) | N/A |
| RI | 4 Years<br>R.I. GEN. LAWS § 6-36-23 | 3 or 10 Years<br>*See* R.I. GEN. LAWS § 9-1-13(a) to 14; *McBurney v. Roszkowski*, 687 A.2d 447, 448-49 (R.I. 1997) |
| SC | N/A | 3 Years<br>S.C. CODE ANN. § 39-5-150 |
| SD | 4 Years<br>S.D. CODIFIED LAWS § 37-1-14.4 | N/A |
| TN | N/A | 1 Year<br>w/ 5-Year Statute of Repose<br>TENN. CODE ANN. 47-18-110 |
| TX | 4 Years<br>TEX. BUS. & COM. CODE § 15.25(a) | 2 Years<br>TEX. BUS. & COM. CODE § 17.565 |
| UT | 4 Years<br>UTAH CODE ANN. § 76-16-503 | 5 Years<br>UTAH CODE ANN. § 13-2-6(6)(b) |
| VT | N/A | 6 Years<br>VT. STAT. ANN. TIT. 12, § 46A-511 |
| WI | 6 Years<br>WIS. STAT. ANN. § 133.18(2) | N/A<br>No private right of action. *See Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 971–72 (E.D. Wis. 1998) |
| WV | 4 Years<br>W. VA. STAT. ANN. § 47-18-11 | N/A |

## APPENDIX C – TOLLING/ACCRUAL DOCTRINES

| State | Continuing Violation Doctrine | Federal Antitrust Harmonization | SOL Runs when Facts Discoverable? | Diligence Requirement for Tolling? |
|---|---|---|---|---|
| AL | Separate Accrual Rule<br>*Fisher v. Space of Pensacola, Inc.*, 483 So.2d 392, 395-96 (Ala. 1986) | N/A | Yes<br>*City of Gadsden v. Harbin*, 398 So.2d 707, 709 (Ala. Civ. App. 1981) | Yes<br>*City of Gadsden v. Harbin*, 398 So.2d 707, 709 (Ala. Civ. App. 1981) |
| AR | Not Recognized<br>*Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 225 S.W.3d 369, 372 (Ark. 2006) | N/A | Yes<br>*Bomar v. Moser*, 251 S.W.3d 234, 241 (Ark. 2007) | Yes<br>*Delanno, Inc. v. Peace*, 237 S.W.3d 81, 86 (Ark. 2006) |
| AZ | Separate Accrual Rule (*Erie* Guess)<br>*In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *12 (W.D. Mo. Aug. 21, 2019) | Yes<br>ARIZ. REV. STAT. § 44-1412 | Yes<br>*Olding v. Pima County*, No. 2 CA-CV 2025-0325, 2026 WL 146684, at *2 (Ariz. Ct. App. Jan. 20, 2026) | Yes<br>*Walk v. Ring*, 44 P.3d 990, 994-95, 999 (Ariz. 2002) |
| CA | Separate Accrual Rule<br>*Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880-81 (Cal. 2013) | No | Yes<br>*Bernson v. Browning-Ferris Indus.*, 873 P.2d 613, 619 (Cal. 1994) | Yes<br>*Bernson v. Browning-Ferris Indus.*, 873 P.2d 613, 619 (Cal. 1994) |
| CO | Not Recognized (*Erie* Guess)<br>*Chrisco v. Raemisch*, 374 F. Supp. 3d 1093, 1097-98 (D. Colo. 2019) | N/A | Yes<br>*BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 114 (Colo. 2011) | Yes<br>*BP Am. Prod. Co. v. Patterson*, 263 P.3d 103, 114 (Colo. 2011) |
| DC | Not Recognized (*Erie* Guess)<br>*In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *12 (W.D. Mo. Aug. 21, 2019) | Yes<br>D.C. CODE § 28-4515 | Yes<br>*Cevenini v. Archbishop of Wash.*, 707 A.2d 768, 771 (D.C. App. 1998) | Yes<br>*Drake v. McNair*, 993 A.2d 607, 620 (D.C. App. 2010) |
| FL | Separate Accrual Rule (*Erie* Guess)<br>*Connecticut v. Sandoz, Inc.*, No. 3:20-cv-00802-MPS, 2025 WL 3043397, at *32 (D. Conn. Oct. 31, 2025) | N/A | Yes<br>*West Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So.3d 635, 639 (Fla. Dist. Ct. App. 2015) | Yes<br>*West Brook Isles Partner's 1, LLC v. Com. Land Title Ins. Co.*, 163 So.3d 635, 639 (Fla. Dist. Ct. App. 2015) |
| HI | Entirety Rule (*Erie* Guess) | Yes<br>HAW. REV. STAT § 480-3 | Yes<br>*Ass'n of Apartment Owners of Newtown Meadows v. Venture* | Yes<br>*Ass'n of Apartment Owners of Newtown Meadows v. Venture* |

| State | Continuing Violation Doctrine | Federal Antitrust Harmonization | SOL Runs when Facts Discoverable? | Diligence Requirement for Tolling? |
|---|---|---|---|---|
| | *Anzai v. Chevron Corp.*, 168 F. Supp. 2d 1180, 1183-87 (D. Haw. 2001) | | *15, Inc.*, 167 P.3d 225, 272-74 (Haw. 2007), *as corrected on denial of reconsideration* (Sept. 20, 2007) | *15, Inc.*, 167 P.3d 225, 270-71 (Haw. 2007), *as corrected on denial of reconsideration* (Sept. 20, 2007) |
| ID | Separate Accrual Rule (*Erie* Guess) *Connecticut v. Sandoz*, Inc., No. 3:20-cv-00802-MPS, 2025 WL 3043397, at *32 (D. Conn. Oct. 31, 2025) | N/A | Yes *VanRenselaar v. Batres*, 575 P.3d 866, 876-77 (Idaho 2025) | Yes *Moyer v. Dough Lasher Construction, Inc.*, 560 P.3d 1114, 1123 (Idaho 2024) |
| IL | Separate Accrual Rule *People ex rel. Hartigan v. Moore*, 493 N.E.2d 85, 86-87 (Ill. App. Ct. 1986) | Yes 740 ILL. COMP. STAT. ANN. § 10/11 | Yes *Turner v. Nama*, 689 N.E.2d 303, 309-10 (Ill. App. 1997) | Yes *Turner v. Nama*, 689 N.E.2d 303, 309-10 (Ill. App. 1997) |
| IA | Separate Accrual Rule (*Erie* Guess) *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *9 (W.D. Mo. Aug. 21, 2019) | Yes IOWA CODE ANN. § 553.2 | Yes *Christy v. Miulli*, 692 N.W.2d 694, 701-02 (Iowa 2005) | Yes *Christy v. Miulli*, 692 N.W.2d 694, 700-02 (Iowa 2005) |
| KS | Not Recognized (*Erie* Guess) *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016) | Yes KAN. STAT. ANN. § 50-163(b) | Yes *Dawson v. BNSF Railway Co.*, 437 P.3d 929, 938 (Kan. 2019) | Yes *Dawson v. BNSF Railway Co.*, 437 P.3d 929, 938 (Kan. 2019) |
| ME | Separate Accrual Rule *McKinnon v. Honeywell Int'l, Inc.*, 977 A.2d 420, 424-25 (Me. 2009) | No | Yes *Efstathiou v. The Aspinquid, Inc.*, 956 A.2d 110, 117 (Me. 2008) | Yes *Efstathiou v. The Aspinquid, Inc.*, 956 A.2d 110, 117 (Me. 2008) |
| MA | Not Recognized (*Erie* Guess) *U.S. ex rel. Dyer v. Raytheon Co.*, No. 08–10341–DPW, 2011 WL 3294489, at *13 n.15 (D. Mass. July 29, 2011) | N/A | Yes *Hays v. Ellrich*, 31 N.E.3d 1064, 1074 (Mass. 2015) | Yes *Hays v. Ellrich*, 31 N.E.3d 1064, 1074 (Mass. 2015) |
| MI | Separate Accrual Rule *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 696 N.W.2d 646, 657-58 (Mich. 2005) | Yes MICH. COMP. LAWS ANN. § 445.784 | Yes *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 403-05 (Mich. App. 2004) | Yes *Prentis Fam. Found. v. Barbara Ann Karmanos Cancer Inst.*, 698 N.W.2d 900, 907 n.2 (Mich. App. 2005) |

| State | Continuing Violation Doctrine | Federal Antitrust Harmonization | SOL Runs when Facts Discoverable? | Diligence Requirement for Tolling? |
|---|---|---|---|---|
| MN | Separate Accrual Rule (*Erie* Guess) *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *13 (W.D. Mo. Aug. 21, 2019) | No | Yes *Minn. Laborers Health and Welfare Fund v. Granite Re, Inc.*, 844 N.W.2d 509, 514 (Minn. 2014) | Yes *Collins v. Johnson*, 374 N.W.2d 536, 541 (Minn. App. 1985) |
| MS | Not Recognized (*Erie* Guess) *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016) | N/A | Yes *Robinson v. Cobb*, 763 So.2d 883, 887 (Miss. 2000) | Yes *Robinson v. Cobb*, 763 So.2d 883, 887 (Miss. 2000) |
| MO | Separate Accrual Rule *Dumler v. Nationstar Mortg., LLC*, 585 S.W.3d 343, 349 (Mo. Ct. App. 2019) | No | Yes *Smile v. Lawson*, 435 S.W.2d 325, 327-28 (Mo. 1968) | Yes *Smile v. Lawson*, 435 S.W.2d 325, 327-28 (Mo. 1968) |
| MT | Separate Accrual Rule *Hein v. Sott*, 353 P.3d 494, 498 (Mont. 2015) | N/A | Yes *Rucinsky v. Hentchel*, 881 P.2d 616, 618 (Mont. 1994) | Yes *Osterman v. Sears, Robuck & Co.*, 80 P.3d 435, 441 (Mont. 2003) |
| NE | Separate Accrual Rule (*Erie* Guess) *Connecticut v. Sandoz*, Inc., No. 3:20-cv-00802-MPS, 2025 WL 3043397, at *44 (D. Conn. Oct. 31, 2025) | Yes NEB. REV. STAT. § 59-829 | Yes *Muller v. Thaut*, 430 N.W.2d 884, 892 (Neb. 1988) | Yes *Chafin v. Wis. Province of Soc'y of Jesus*, 917 N.W.2d 821, 825 (Neb. 2018) |
| NV | Separate Accrual Rule (*Erie* Guess) *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *10 (W.D. Mo. Aug. 21, 2019) | Yes NEV. REV. STAT. § 598A.050 | Yes *Siragusa v. Brown*, 971 P.2d 801, 806-07 (Nev. 1998) | Yes *Fausto v. Sanchez-Flores*, 482 P.3d 677, 681 (Nev. 2021) |
| NH | Separate Accrual Rule (*Erie* Guess) *Connecticut v. Sandoz*, Inc., No. 3:20-cv-00802-MPS, 2025 WL 3043397, at *45 (D. Conn. Oct. 31, 2025) | Yes N.H. REV. STAT. § 356:12 | Yes *Beane v. Dana S. Beane & Co., P.C.*, 7 A.3d 1284, 1290 (N.H. 2010) | Yes *Beane v. Dana S. Beane & Co., P.C.*, 7 A.3d 1284, 1290 (N.H. 2010) |
| NM | Separate Accrual Rule (*Erie* Guess) *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 | Yes N.M. STAT. ANN. § 57-1-15 | Yes *Tomlinson v. George*, 116 P.3d 105, 110-11 (N.M. 2005) | Yes *Tomlinson v. George*, 116 P.3d 105, 114-15 (N.M. 2005) |

| State | Continuing Violation Doctrine | Federal Antitrust Harmonization | SOL Runs when Facts Discoverable? | Diligence Requirement for Tolling? |
|---|---|---|---|---|
| | WL 4796528, at *10 (W.D. Mo. Aug. 21, 2019) | | | |
| NY | Separate Accrual Rule<br>*Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*, No. 600815–2007, 2008 WL 2676805, at *10 (N.Y. Sup. Ct. 2008) | No | Yes<br>*Kotlyarsky v. N.Y. Post*, 757 N.Y.S.2d 703, 707 (N.Y. Sup. Ct. 2003) | Yes<br>*Simcuski v. Saeli*, 377 N.E.2d 713, 717 (N.Y. 1978) |
| NC | Separate Accrual Rule (*Erie* Guess)<br>*In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *14-15 (W.D. Mo. Aug. 21, 2019) | No | Yes<br>*Doe v. Roman Catholic Diocese of Charlotte, NC*, 775 S.E.2d 918, 922-23 (N.C. App. 2015) | Yes<br>*Doe v. Roman Catholic Diocese of Charlotte, NC*, 775 S.E.2d 918, 922-23 (N.C. App. 2015) |
| ND | Separate Accrual Rule (*Erie* Guess)<br>*In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *15 (W.D. Mo. Aug. 21, 2019) | No | Yes<br>*Muhammed v. Welch*, 675 N.W.2d 402, 406-07 (N.D. 2004) | Yes<br>*Muhammed v. Welch*, 675 N.W.2d 402, 406-07 (N.D. 2004) |
| OR | Not Recognized (*Erie* Guess)<br>*Colquitt v. Mfrs. & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1228 (D. Or. 2015) | Yes<br>OR. REV. STAT. ANN. § 646.715(2) | Yes<br>*MAT, Inc. v. Am. Tower Asset Sub, LLC*, 493 P.3d 14, 20-21 (Or. App. 2021) | Yes<br>*MAT, Inc. v. Am. Tower Asset Sub, LLC*, 493 P.3d 14, 20-21 (Or. App. 2021) |
| RI | Separate Accrual Rule (*Erie* Guess)<br>*In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 867 (N.D. Cal. Mar. 5, 2020) | Yes<br>R.I. GEN. LAWS § 6-36-2 | Yes<br>*Polanco v. Lombardi*, 231 A.3d 139, 155-56 (R.I. 2020) | Yes<br>*Polanco v. Lombardi*, 231 A.3d 139, 155-56 (R.I. 2020) |
| SC | Separate Accrual Rule<br>*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 199-200 (S.C. 2015) | N/A | Yes<br>*Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 33 (S.C. 2009) | Yes<br>*Stokes-Craven Hldg. Corp. v. Robinson*, 787 S.E.2d 485, 489-90 (S.C. 2025) |
| SD | Separate Accrual Rule (*Erie* Guess)<br>*Taylor v. JBS Foods USA*, No. 3:23-CV-03031-ECS, 2025 WL 102450, at *14 (D.S.D. Jan. 15, 2025) (slip) | Yes<br>S.D. CODIFIED LAWS § 37-1-22 | Yes<br>*One Star v. Sisters of St. Francis, Denver, Colo.*, 752 N.W.2d 668, 681-82 (S.D. 2008) | Yes<br>*One Star v. Sisters of St. Francis, Denver, Colo.*, 752 N.W.2d 668, 681-82 (S.D. 2008) |
| TN | Not Recognized (*Erie* Guess) | N/A | Yes<br>*Redwing v. Catholic Bishop for Diocese of* | Yes<br>*Redwing v. Catholic Bishop for Diocese of* |

| State | Continuing Violation Doctrine | Federal Antitrust Harmonization | SOL Runs when Facts Discoverable? | Diligence Requirement for Tolling? |
|---|---|---|---|---|
| | *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *15 (W.D. Mo. Aug. 21, 2019) | | *Memphis*, 363 S.W.3d 436, 463 (Tenn. 2012) | *Memphis*, 363 S.W.3d 436, 463 (Tenn. 2012) |
| TX | Separate Accrual Rule (*Erie* Guess) *Acad. of Allergy & Asthma in Primary Care & United Biologics, LLC v. Superior Healthplan, Inc*, No. SA-17-CA-1122-FB (HJB), 2022 WL 18076843, at *23 (W.D. Tex. July 14, 2022), *report and recommendation adopted*, 2022 WL 18034365 (W.D. Tex. Oct. 18, 2022) | Yes TEX. BUS. & COM. CODE § 15.04 | Yes *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229-30 (Tex. 2015) | Yes *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex. 1997) |
| UT | Separate Accrual Rule (*Erie* Guess) *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *11 (W.D. Mo. Aug. 21, 2019) | Yes UTAH CODE ANN. § 76-16-502 | Yes *Rappleye v. Rappleye*, 99 P.3d 348, 355 (Utah App. 2004) | Yes *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 750 (Utah 2005) |
| VT | Not Recognized *Nesti v. Vt. Agency of Transp.*, 296 A.3d 729, 741 (Vt. 2023) | N/A | Yes *Estate of Alden v. Dee*, 35 A.3d 950, 958 (Vt. 2011) | Yes *Standard Packaging Corp. v. Julian Goodrich Architects, Inc.*, 392 A.2d 402, 405-06 (Vt. 1978) |
| WI | Not Recognized (*Erie* Guess) *In re Pre-Filled Propane Tank Antitrust Litig.*, No. 14-02567-MD-W-GAF, 2019 WL 4796528, at *16 (W.D. Mo. Aug. 21, 2019) | No | Yes *Schmidt v. N. States Power Co.*, 742 N.W.2d 294, 304 (Wis. 2007) | Yes *Claypool v. Levin*, 562 N.W.2d 584, 591 (Wis. 1997) |
| WV | Entirety Rule (*Erie* Guess) *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, No. 2:04-0867, 2006 WL 8439029, at *3 (S.D. W. Va. Jan. 30, 2006) | Yes W. VA. STAT. ANN. § 47-18-16 | Yes *Trivett v. Summers Cty. Comm'n*, 895 S.E.2d 86, 100-01 (W. Va. 2023) | Yes *Trivett v. Summers Cty. Comm'n*, 895 S.E.2d 86, 100-01 (W. Va. 2023) |

## APPENDIX D – STATE LAW-SPECIFIC ARGUMENTS FOR IPPS' FAILURE TO STATE A CLAIM FOR RELIEF

<table>
<tr><th colspan="2">State Laws that Prohibit Indirect Purchaser Claims Under Illinois Brick</th></tr>
<tr><td>Texas Free Enterprise & Antitrust Act<br>Tex. Bus. & Comm. Code Ann. § 15.04</td><td>The TFEAA's harmonization provision incorporates Illinois Brick's prohibition on indirect purchaser claims to Texas antitrust claims. See Ill. Brick Co. v. Illinois, 431 U.S. 720, 720 (1977) (holding that only direct purchasers can claim "injur[y] in [their] business or property" under federal antitrust law).<br>• Abbott Labs., Inc. v. Segura, 907 S.W.2d 503, 506 (Tex. 1995) (recognizing that Texas antitrust law "allow[s] only direct purchasers to recover in antitrust").</td></tr>
<tr><td>Texas Deceptive Trade Practices Act<br>Tex. Bus. & Comm. Code Ann. § 17.41</td><td>The Texas Supreme Court has held that TDTPA claims making antitrust allegations are subject to the same prohibition on indirect purchaser recovery as claims under the TFEAA.<br>• "Our holding today . . . forecloses the recovery of damages for seeking a prohibited antitrust recovery under the masquerade of our consumer protection statute." Id. at 506-07.</td></tr>
<tr><th colspan="2">Statutes Requiring In-State Residence, Purchase, or Other Substantial Connection</th></tr>
<tr><td>Illinois Consumer Fraud Act<br>815 Ill. Comp. Stat. Ann. § 505/1</td><td>An out-of-state plaintiff may only "pursue a private cause of action under [ICFA] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 853-54 (Ill. 2005) (emphasis added).<br>• "Four of the five named plaintiffs in th[e] case" had no connection to Illinois; "[t]hese individuals ha[d] no cause of action under the Act." Id. at 855.<br>• Camargo v. Abbvie, Inc., 2026 WL 115068, at *3 (N.D. Ill. Jan. 14, 2026) (citing Avery to dismiss ICFA claims brought by "non-Illinois residents" whose "claims lack[ed] a substantial connection to Illinois").</td></tr>
<tr><td>Mississippi Antitrust Act<br>Miss. Code Ann. § 75-21-1</td><td>The Mississippi Supreme Court has held that "a material element to an MAA claim is that the illegal objective of the trust be accomplished in part at least by transactions lying wholly within the state." State ex rel. Fitch v. Yazaki N. Am., Inc., 294 So.3d 1178, 1189 (Miss. 2020) (citations omitted).<br>• Allegations that price-fixed products "were purchased, directly or indirectly, throughout the State of Mississippi after they became a part of interstate and intrastate commerce" failed to state a claim under the MAA. Id.<br>• "[A]llegations of nationwide conduct, repeating the same generalized allegations for each state," as IPPs do here, fails to "allege any 'wholly</td></tr>
</table>

| | |
|---|---|
| | intrastate' conduct" under the MAA. *In re Copaxone Antitrust Litig.*, No. 2:22-cv-1232 (JXN/JSA), 2025 WL 2771874, at *14 (D.N.J. Aug. 7, 2025). |
| **North Carolina Unfair Trade Practices Act**<br>N.C. Gen. Stat. § 75-1.1 | The NCUTPA requires that a plaintiff personally suffer a "substantial . . . injury" within North Carolina, with unnamed class member injury from "inflated prices" due to an alleged nationwide conspiracy being at most "incidental" harm insufficient to state a claim. *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *19 (E.D. Mich. Apr. 9, 2013).<br>• "Because the named plaintiffs have not alleged that ***they*** experienced any harm within North Carolina, they cannot state a claim under the NCUTPA." *In re StarLink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 851 (N.D. Ill. 2002) (emphasis added).<br>• *Ada Liss Group (2003) v. Sara Lee Corp.*, No. 1:06CV610, 2009 WL 3241821, at *12 (M.D.N.C. Sept. 30, 2009) (noting that "numerous federal courts" have dismissed NCUTPA claims on this basis, and collecting cases). |
| **Oregon Antitrust Act**<br>Or. Rev. Stat. Ann. § 646.715(2) | Oregon's antitrust statute applies only "to intrastate trade or commerce" or "to interstate trade or commerce involving an actual or threatened injury to a person or property located in this state."<br>• General allegations of nationwide conspiracy affecting interstate commerce, where plaintiff "d[id] not reside in Oregon" nor "own[] any property in that state, . . . would not establish the requisite injury" to "plead a viable antitrust claim under Oregon law." *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 841-42 (E.D. Mich. 2018).<br>• *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 51 (D.D.C. 1999) (dismissing Oregon antitrust claims where suit was "primarily of an interstate nature" based on "plain language of the provision"). |
| **Utah Antitrust Act**<br>Utah Code Ann. § 76-16-511 (1)(a)(i) | The UAA provides a private cause of action only for a "person who is a citizen of this state or a resident of this state."<br>• "[A] number of courts have dismissed claims brought under Utah antitrust law by plaintiffs who were neither citizens nor residents of Utah." *GEICO*, 345 F. Supp. 3d at 841 (collecting cases).<br>• "Utah's citizen/residency requirement is one of statutory standing. Accordingly, at least one named plaintiff must be a citizen or resident of Utah in order to seek classwide relief under the [UAA]." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759-60 (E.D. Pa. 2014). |
| **State Laws Prohibiting Class Actions** | |
| **Alabama Deceptive Trade** | "A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class. The limitation in this subsection is a substantive limitation and allowing a consumer or other person to bring a class action or |

| | |
|---|---|
| **Practices Act**<br>Ala. Code<br>§ 8-19-10(f) | other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter."<br>• The ADTPA was amended in 2016 to add the second sentence above, reinforcing the substantive nature of the limitation. *See* 2016 Ala. Laws 2016-407; *see, e.g.*, *Delgado v. Ocwen Loan Servicing*, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017) (following "the majority of courts" to dismiss ADTPA class claim and holding that class action bar "incorporate[s] a substantive policy choice"). |
| **Illinois Antitrust Act**<br>740 Ill. Comp. Stat. Ann.<br>§ 10/7(2) | "[N]o person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General . . . ."<br>• "[T]he overwhelming weight of authority" holds that Illinois antitrust class action claims "cannot be brought in federal court. . . . To find that indirect purchasers could bring an indirect suit under Illinois law in federal district court but not in the state court of Illinois (from which the substantive right arises) would be the quintessence of forum shopping." *In re Copaxone*, 2025 WL 2771874, at *11. |
| **Montana Consumer Protection Act**<br>Mont. Code<br>§ 30-14-133(1)(a) | "[A] consumer who suffers any ascertainable loss of money or property, . . . [as a result] of a method, act, or practice declared unlawful by 30-14-103 may bring an individual action but not a class action . . . ."<br>• "[W]hen a state legislature creates a private right of action to enforce a state statute's requirements, the state's definition of that private right of action to prohibit class actions defines the scope of the state-created right, and is therefore substantive." *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) (dismissing MCPA claim along with Alabama, South Carolina, and Tennessee consumer protection claims). |
| **South Carolina Unfair Trade Practices Act**<br>S.C. Code<br>§ 39-5-140(a) | "Any person who suffers any ascertainable loss . . . [as a result of] an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages."<br>• *See, e.g.*, *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-CV-714, 2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013) ("Here, the prohibitions against class actions ingrained in the very text of the SCUTPA . . . are substantive portions of South Carolina law and are not trumped by Federal Rule of Civil Procedure 23, even in light of the *Shady Grove* decision."). |
| **Tennessee Consumer Protection Act** | "No class action lawsuit may be brought to recover damages for an unfair or deceptive act or practice declared to be unlawful by this part."<br>• *See, e.g.*, *Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) ("[T]he class-action limitation contained |

| | |
|---|---|
| Tenn. Code § 47-18-109(g) | in the TCPA is so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights."). |
| **Utah Consumer Sales Practices Act**<br>Utah Code § 13-11-19(2), (4)(a) | "A consumer who suffers loss as a result of a violation of this chapter may recover actual damages plus costs, but not in a class action except as provided in this section." Utah Code § 13-11-19(2). Class actions under UCSPA are authorized only against conduct violating an existing administrative "rule . . . [adopted] before the consumer transactions on which the action is based" or following a "final judgment" or "consent judgment" specifically covering the conduct at issue. *Id.* at (4)(a). IPPs have not alleged these prerequisites.<br>• "In short, class actions seeking money damages [under UCSPA] are available only when a supplier's actions violate an existing administrative rule, court order, or consent decree." *Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1282 (D. Utah 2020) (dismissing UCSPA claim for failure to allege class action prerequisites); *see Martinez v. Nissan N. Am., Inc.*, No. 1:21-cv-157-DBB, 2022 WL 1063735, at *2 (D. Utah. Apr. 8, 2022) (same); *Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 538-39 (E.D. Mich. 2025) (same).<br>• "[U]nder the second step of the *Shady Grove* analysis, Rule 23 would not preempt state law because UCSPA subsections (2) and (4)(a) are so intertwined with a state right or remedy that they function to define the scope of the state-created right." *Fullmer v. A-1 Collection Agency, LLC*, No. 4:20-CV-00143-DN-PK, 2022 WL 1538675, at *4 (D. Utah May 16, 2022) (citations and alterations omitted). |
| **Alleged Price-Fixing Outside Scope of Statute** | |
| **Hawaii Unfair Practices Act**<br>Haw. Rev. Stat. § 481-1 | By its own terms, Hawaii's Unfair Practices Act prohibits only price discrimination, Haw. Rev. Stat. § 481-1, certain below-cost sales, *id.* § 481-3, and discriminatory rebates, *id.* § 481-7. IPPs' allegations of coordination on MAPs do not state a claim under any of these limited categories of liability. |
| **Wisconsin**<br>Wis. Stat. § 100.20(5) | Wisconsin's unfair competition statute authorizes private claims only for violations of state administrative orders—which IPPs do not and cannot allege.<br>• "[N]o private cause of action exists under § 100.20, except for violation of an order issued by the Department [of Agriculture, Trade and Consumer Protection] under this section." *Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 971 (E.D. Wis. 1998); *In re Refrigerant Compressors*, 2013 WL 1431756, at *21-22 (dismissing claims on this basis). |

| Statutes Requiring Deceptive Conduct | |
|---|---|
| **Colorado Consumer Protection Act** Colo. Rev. Stat. §§ 6-1-105, -113 | The CCPA's private right of action is limited to enumerated "deceptive trade practice[s]," which do not include price-fixing or other traditional antitrust misconduct.<br>• *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 407-08 (E.D. Pa. 2010) (CCPA limited to "deceptive trade practices" and not other "anti-competitive behavior"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 179-80 & n.28 (D. Me. 2004) (dismissing CCPA claim that did not allege "fraudulent or deceptive conduct"). |
| **Idaho Consumer Protection Act** Idaho Code §§ 48-603, 603C | The ICPA prohibits enumerated conduct, with catch-all provisions limited to "misleading, false, or deceptive" conduct, § 48-603(17), or "sales conduct" that "would outrage or offend the public conscience," § 48-603C(2)(d). IPPs have pleaded no facts satisfying these requirements.<br>• The Idaho Supreme Court has held that price-fixing allegations do not constitute prohibited conduct under the CPA. *Wasden v. Daicel Chem. Indus.*, 106 P.3d 428, 434 (Idaho 2005) ("[p]rice-fixing is not listed in § 48–603 as conduct that constitutes either an unfair method of competition or an unfair or deceptive act or practice"); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 786 (N.D. Ohio 2011) (same). |
| **Kansas Consumer Protection Act** Kan. Stat. Ann. § 50-627 | The KCPA's prohibition of "unconscionable" conduct "in connection with a consumer transaction" does not encompass alleged price-fixing.<br>• The KCPA is "inapplicable to price-fixing claims such as those at issue in the present case." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (citing *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 306-08 (Kan. 1988)).<br>• KCPA violations also "require[] a showing of deception" to state a claim. *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, 2018 WL 7197233, at *43 (S.D.N.Y. Dec. 26, 2018) (citing *Cornelison v. Denison State Bank*, 315 P.3d 278 (Kan. Ct. App. 2014)). |
| **Maine Unfair Trade Practices Act** Me. Stat. tit. 5, § 207 | Controlling Maine precedent holds that MUTPA does not prohibit conduct that allegedly causes inflated prices to consumers, including alleged price-fixing.<br>• "The Maine Supreme Court has held that, '[i]n pricing cases under the Act[,] the inquiry is whether the price has the effect of deceiving the consumer, or inducing her to purchase something she would not otherwise purchase.' . . . In pricing cases where the alleged conduct results in higher prices to consumers, MUTPA provides no relief regardless of whether the underlying conduct is alleged to be an unfair method of competition or an unfair or deceptive act." *Connecticut v. Aurobindo Pharma USA, Inc.*, No. 3:16-CV- |

| | |
|---|---|
| | 02056 (MPS), 2025 WL 1207566, at *8 (D. Conn. Apr. 25, 2025) (quoting *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998)).<br>• *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 396 (D.N.J. 2018) (relying on *Tungate* to dismiss MUTPA claim as inapplicable to antitrust allegations). |
| **Minnesota Consumer Fraud Act** Minn. Stat. § 325F.69 | Before its July 1, 2023 amendment, the MCFA prohibited only "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice." Minn. Stat. § 325F.69(1) (2005) (amended 2023). The MCFA does not apply retroactively, so IPPs' failure to allege fraudulent or deceptive conduct means the claim must be limited to violations occurring on or after July 1, 2023.<br>• "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn. Stat. § 645.21.<br>• *In re New Motor Vehicles Can. Export Antitrust Litig.*, 350 F. Supp. 2d 160, 189-90 (D. Me. 2004) (dismissing MCFA claims under prior version of statute where plaintiffs failed "to allege any fraud or deception by the defendants") (citing *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 474 (Minn. 1999)). |
| **New York** N.Y. Gen. Bus. Law § 349 | The scope of NYGBL § 349 is limited by its terms to "deceptive" conduct only.[5] IPPs have not alleged any such conduct and "deceptive" conduct does not include alleged price-fixing generally.<br>• "The New York statute requires 'a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof.'" *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 410 (S.D.N.Y. 2011) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)).<br>• "[A]nticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute." *Leider v. Ralfe*, 387 F. Supp. 2d 283, 295 (S.D.N.Y. 2005). |
| **West Virginia Consumer Credit & Protection Act** W. Va. Code § 46A-6-104 | Courts have read the WVCCPA to require deceptive conduct and exclude allegations of price-fixing and other traditional antitrust misconduct.<br>• "[R]eading the list [of statutory prohibited conduct] literally, nothing on the list targets what might be called traditional antitrust conduct." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1118 (N.D. Cal. 2007); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1172-73 (N.D. Cal. 2015) (dismissing WVCCPA claims based on "general antitrust allegations"). |

[5] Effective in February 2026, New York amended GBL § 349 to cover "unfair" practices. This amendment (1) does not apply retroactively to IPPs' claims and (2) does not expand the private right of action, which is limited to "deceptive" conduct. 2025 N.Y. Sess. Laws 708 (McKinney).