IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-md-03160-PAB-TPO

MDL No. 3160

IN RE ARCHERY PRODUCTS ANTITRUST LITIGATION

---

**Defendant Scheels All Sports, Inc.'s Motion to Compel Arbitration and Stay Proceedings**

---

Defendant Scheels All Sports, Inc. ("Scheels") moves, pursuant to the Federal Arbitration Act ("FAA") (9 U.S.C. § 1 et seq.), for an order compelling arbitration of claims asserted in the Direct Purchaser Plaintiffs' Consolidated Amended Complaint ("DPPC") (ECF 109) and the Indirect Purchasers' Consolidated Class Action Complaint ("IPPC") (ECF 110) (the "Consolidated Complaints") against Scheels by Plaintiffs Shane Close, Joe Kramer, Brock Montpetit, Alex Janochoski, Peter A. Sabatini, Peter J. Sabatini, and Matt Simcik (collectively, "Arbitrable Plaintiffs") and a stay of all claims against Scheels until the conclusion of arbitration.[1]

I.      INTRODUCTION

Arbitrable Plaintiffs' claims against Scheels belong in arbitration, not in federal court. On December 19, 2025, Arbitrable Plaintiffs added Scheels, a North Dakota-based retailer, as a

---

[1] Pursuant to D.C.COLO.LCivR 7.1, Scheels' counsel conferred with Arbitrable Plaintiffs' counsel prior to filing this motion. Arbitrable Plaintiffs oppose the relief requested. In an effort to narrow the scope of this motion, Scheels' counsel provided contact information to confirm that its records related to the named plaintiffs. Direct Purchaser Plaintiffs' counsel refused to confirm if their clients used the home addresses, email addresses, or phone numbers that Scheels identified as belonging to customers with the same names. Scheels therefore moves to compel arbitration of all named plaintiffs whose contact information matches that provided by Plaintiffs' counsel or otherwise matches Scheels' records. *See* Declaration of Brad Duerr ¶¶ 13–14.

defendant in their putative class action lawsuits alleging a conspiracy to fix prices for archery products. Each Arbitrable Plaintiff is also a Scheels customer and (repeatedly) assented to Scheels' Terms & Conditions, which include a provision requiring all disputes to be resolved through individual arbitration. The Court should compel the Arbitrable Plaintiffs' claims against Scheels to individual arbitrations and stay the case against Scheels pending resolution of those arbitrations.

## II.    BACKGROUND

### A.    The Arbitration Agreements Govern The Parties' Relationships

Scheels' records confirm that each Arbitrable Plaintiff entered into a legally binding agreement with Scheels that contains a provision compelling arbitration of their claims and waiving their ability to litigate on a class basis. The relationship between Scheels and customers who elect to make online purchases or register for Scheels accounts is governed by Scheels' Terms & Conditions. Declaration of Brad Duerr ("Duerr Decl.") ¶ 5. In May 2024, Scheels modified its Terms & Conditions to include a "Disputes, Arbitration, and Applicable Law" ("Disputes") section containing an arbitration provision. *Id.* ¶ 6 & Ex. B. In June 2025, Scheels further amended its Terms & Conditions but did not materially change the Disputes section. Duerr Decl. ¶ 7. The operative June 2025 Terms & Conditions, which contain the arbitration provision at issue here, are affixed as Exhibit A to the Declaration of Brad Duerr.

Scheels' Terms & Conditions state that "[b]y registering for or using the [Scheels] Community or any of its related services, you agree that you have read and understand these terms and . . . you agree to be bound by them." Ex. A at 1. A link to the Terms & Conditions is featured on the bottom of Scheels' website as imaged below.

Privacy Policy    Cookie Policy    California Privacy Rights    Terms & Conditions    Accessibility Statement    No Surprise Act    ACA Transparency MRF

Duerr Decl. ¶ 9 & Ex. C (emphasis added). Users can access Scheels' website and purchase products either by creating a Scheels account or by checking out as a "guest." Duerr Decl. ¶ 11. Users must assent to Scheels' Terms & Conditions under either option. When users register, they are warned that "[b]y registering an account, you agree to [Scheels'] Terms of Use" and note their assent by clicking the "Create Account" button. Duerr Decl. ¶ 10 & Ex. D. During checkout, both registered users and guests are warned that "[b]y placing this order, you agree to SCHEELS Terms & Conditions" and note their assent by clicking the "PLACE ORDER" button. Duerr Decl. ¶ 11 & Ex. E. True and correct images of these disclosures are below.

Duerr Decl. ¶¶ 10–11 & Exs. D, E. During the time period relevant to this motion, Arbitrable Plaintiffs Close, Kramer, and Simcik registered for a Scheels account and Close, Kramer, Montpetit, Janochoski, Peter A. Sabatini, and Peter J. Sabatini made at least 12 collective purchases from Scheels' website. Duerr Decl. ¶¶ 13–14 & Ex. F. Montpetit's online purchases include archery products. Ex. F.

Since May 2024, Scheels' Terms & Conditions have contained an arbitration provision requiring individual arbitration (hereinafter, the "Arbitration Agreement") to resolve disputes. Ex. A at 9. The Terms & Conditions begin by prominently warning users about this in capital letters:

> IMPORTANT: **THIS TERMS OF USE AGREEMENT INCLUDES A CLASS ACTION WAIVER THAT REQUIRES ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES**. . . . DETAILS ARE SET FORTH BELOW IN THE SECTION TITLED "DISPUTES, ARBITRATION, AND APPLICABLE LAW". PLEASE REVIEW CAREFULLY.

3

*Id.* at 1 (emphasis added). That notice also refers users to the Disputes section containing the Arbitration Agreement, which states:

> EXCEPT FOR DISPUTES THAT QUALIFY FOR SMALL CLAIMS COURT, YOU AGREE THAT **ALL DISPUTES ARISING OUT OF OR RELATED TO THESE TERMS OF USE OR ANY ASPECT OF THE RELATIONSHIP BETWEEN YOU AND SCHEELS**, INCLUDING ANY PRODUCTS OR SERVICES OFFERED OR SOLD BY SCHEELS, **WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION** BEFORE A SINGLE NEUTRAL ARBITRATOR INSTEAD OF IN A COURT BY A JUDGE OR JURY. YOU AND SCHEELS AGREE THAT EACH GIVE UP THE RIGHT TO BRING AND PROSECUTE ANY DISPUTES INVOLVING SCHEELS IN A COURT OF LAW OR BEFORE A JURY TO THE FULLEST EXTENT PERMITTED BY LAW. **YOU ALSO WAIVE YOUR RIGHT TO BRING OR PARTICIPATE IN CLASS ACTIONS OR REPRESENTATIVE ACTIONS**.

*Id.* at 9 (emphasis added). The Arbitration Agreement provides that "the arbitrator shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Disputes Section, including, but not limited to, a claim that all or any part of it is voidable or void." *Id.* at 10–11. "AAA Consumer Arbitration Rules" are incorporated into the Arbitration Agreement and the FAA "governs the interpretation and enforcement of this Disputes Section." *Id.* In the event the FAA is "found not to apply to any portion," North Dakota law applies. *Id.* at 11.

### B.    Arbitrable Plaintiffs' Claims In This Litigation

Arbitrable Plaintiffs sued Scheels on December 19, 2025, alleging violations of Sections 1 and 3 of the Sherman Act and state antitrust and consumer protection laws. Scheels was added as a defendant via the Consolidated Complaints after being omitted from all 25 actions originally consolidated in this multidistrict litigation. Twelve named plaintiffs bring these claims on behalf of purported classes of direct and indirect purchaser plaintiffs. Seven Plaintiffs—Close, Kramer, Montpetit, Janochoski, Peter A. Sabatini, Peter J. Sabatini, and Simcik—are the Arbitrable

Plaintiffs.[2] They allege Scheels and its co-defendants engaged in an industry-wide conspiracy to fix prices for archery products through coordinated "adoption, implementation, and enforcement" of MAP policies and "group boycotts of industry participants" who refused to join. DPPC ¶¶ 1–4, 8–9, 104; IPPC ¶¶ 3–5, 59, 63, 149. That is, Arbitrable Plaintiffs claim they paid more for archery products, whether purchased from Scheels or another source, because of the alleged conspiracy. DPPC ¶¶ 213–14; IPPC ¶¶ 181–82.

Arbitrable Plaintiffs' claims against Scheels should be dismissed on the merits, but the Court need not reach that question because each unambiguously agreed to the arbitration provision in Scheels' Terms & Conditions, which requires them to individually arbitrate these claims. Despite being required to do so, Arbitrable Plaintiffs made no effort to confer with Scheels regarding these issues or submit any issue to arbitration. Instead, they sued. Arbitrable Plaintiffs continue to pursue this litigation rather than submit this dispute to the agreed arbitration.

## III.    LEGAL STANDARD

In deciding whether to compel arbitration under the FAA, a court must determine two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). However, a court "possesses no power" to decide issues of arbitrability like the enforceability of the contract and whether it covers the claims at issue when, as here, the parties' agreement shows "clear and unmistakable" intent to delegate those questions to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–69 (2019). Instead, the court

---

[2] Scheels does not currently seek to compel arbitration for the remaining named plaintiffs but reserves the right to do so if it later discovers they agreed to the arbitration provision. The remaining plaintiffs' claims, however, should be stayed for the reasons described herein.

must compel the dispute to arbitration upon determining that a valid agreement exists. *Id.* at 69.

## IV.    ARGUMENT

This Court should grant Scheels' motion to compel arbitration of each Arbitrable Plaintiff's claims on an individual basis and stay this action against Scheels.

### A.    The FAA Governs And Favors Enforcement Of The Arbitration Agreement

The FAA reflects a "liberal federal policy favoring arbitration," which makes arbitration agreements "'valid, irrevocable, and enforceable' as written." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 346 (2011) (quoting 9 U.S.C. § 2). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," regardless of the nature of the disputed issue. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Here, by agreement of the parties, the FAA governs the Arbitration Agreement. *See* Ex. A at 11; *see also DirecTV, Inc. v. Imburgia*, 577 U.S. 47, 53–54 (2015) (parties to arbitration agreement have "considerable latitude to choose what law governs some or all its provisions"); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018) (courts must "enforce arbitration agreements according to their terms"). The FAA also governs arbitration agreements evidencing transactions involving interstate commerce, 9 U.S.C. § 2, like Arbitrable Plaintiffs' transactions here, Duerr Decl. ¶ 4.

### B.    Arbitrable Plaintiffs Agreed To Arbitrate "All Disputes" With Scheels

Arbitrable Plaintiffs must arbitrate their claims because they entered into a valid Arbitration Agreement with Scheels. In determining whether a valid arbitration agreement exists, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 334 (10th Cir. 1993) (analysis viewed through FAA's pro-arbitration

6

lens). While courts often look to the forum state's laws (Colorado), here the Terms & Conditions provide that North Dakota law, where Scheels is incorporated and headquartered, governs. *See* Ex. A at 11; *Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310–11 (10th Cir. 2014) (courts apply chosen law and, if none, substantial relationship test). A valid agreement to arbitrate exists under either North Dakota or Colorado law, which are similar in all relevant respects.

Under either state's law, an enforceable contract requires mutual assent. *B.J. Kadrmas, Inc. v. Oxbow Energy, LLC*, 727 N.W.2d 270, 273 (N.D. 2007); *Macasero v. ENT Credit Union*, 533 P.3d 982, 988 (Colo. Ct. App. 2023). Users are bound by online arbitration agreements like the one at issue here upon "reasonable notice, either actual or constructive, of the terms of the putative agreement and . . . manifest[ation] [of] assent to those terms." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013); *see also RTS Shearing, LLC v. BNI Coal, Ltd.*, 965 N.W.2d 40, 46–47 (N.D. 2021) (incorporation by reference of contract terms sufficient). Arbitrable Plaintiffs were given ample notice of Scheels' Terms & Conditions and its arbitration provision and unambiguously manifested assent, making the Arbitration Agreement valid and enforceable.

*First*, Arbitrable Plaintiffs had notice of the Terms & Conditions and the Arbitration Agreement within. With each purchase or account registration, Arbitrable Plaintiffs not only had the opportunity to review Scheels' Terms & Conditions via the hyperlink displayed at the bottom of the webpage, but they were also required to click a confirmation button positioned immediately above a clear, unobscured, underlined, and hyperlinked notice of those Terms & Conditions. Duerr Decl. ¶¶ 10–11. Courts routinely enforce similar "sign-in" or "modified clickwrap" agreements where, as here, "the hyperlinked Terms and Conditions are next to the only button that will allow

7

the user to continue use of the website," clearly and conspicuously warning that "by choosing to sign up for the service, [they are] 'agreeing' to the hyperlinked terms." *Route App, Inc. v. Heuberger*, 2022 WL 2316377, at *3–4 (D. Utah June 28, 2022) (agreement enforceable where notice of terms was "unobscured," "underlined," and "in close proximity to the 'REGISTER' button"); *see also, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–79 (2d Cir. 2017) (same where hyperlinked terms were "underlined," in "contrast[]" with the background, and near the "REGISTER" button); *Selden v. Airbnb, Inc.*, 4 F.4th 148, 155–58 (D.C. Cir. 2021) (similar); *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1191 (D. Utah 2024) (similar). Nor is there a question that the Arbitration Agreement was clearly and unambiguously disclosed in the Terms & Conditions as they begin with a notice labeled "IMPORTANT" at the top of the first page, directing users' attention to the Arbitration Agreement. *See* Ex. A at 1.

*Second*, Arbitrable Plaintiffs repeatedly and unambiguously manifested assent to arbitration. The close proximity between the notice of the Terms & Conditions and the "Create Account" or "PLACE ORDER" button during registration or checkout would make clear to a "reasonable user . . . that by clicking the registration [or checkout] button, [they] w[ere] agreeing to the terms and conditions accessible via the hyperlink, whether [they] clicked on the hyperlink or not." *Meyer*, 868 F.3d at 79–80 (finding similar agreement enforceable); *see also Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019) (crediting similar argument). Arbitrable Plaintiffs Close, Kramer, and Simcik manifested their assent by creating their Scheels accounts and Close, Kramer, Montpetit, Janochoski, Peter A. Sabatini, and Peter J. Sabatini manifested their assent each of the 12 times they collectively made purchases using Scheels' website. *See* Duerr Decl. ¶¶ 13–14 & Ex. F; *see also Levy v. Credit Plus, Inc.*, 2023 WL 2644352, at *7 (S.D.N.Y.

Mar. 27, 2023) (clicking "Create Your Account" button manifests assent to arbitration agreement in terms of service hyperlinked above). Moreover, Kramer and Montpetit made repeat purchases, further noting assent to the Terms & Conditions. Ex. F; *see* Ex. A at 1; *Petrie*, 360 F. Supp. 3d at 1162; *see also Spain v. Johnson*, 711 F. Supp. 3d 1260, 1265 (D. Colo. 2024) (assent further manifested by continued use of account after being informed of and agreeing to terms of service).

Because Arbitrable Plaintiffs assented to a valid Arbitration Agreement, the FAA requires arbitration of their claims. *See* 9 U.S.C. §§ 2, 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (FAA "mandates" that the district court "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").[3]

### C. Any Dispute Over The Scope And Enforceability Of The Arbitration Agreement Is For The Arbitrator To Decide

Arbitrable Plaintiffs' assent to the Arbitration Agreement should end this matter, and they should be compelled to arbitrate because all arguments concerning "arbitrability," such as the enforceability of the contract and whether it covers the claims here, have been delegated to the arbitrator. Ex. A at 10–11; *see also Henry Schein*, 586 U.S. at 65. Where, as here, there is "clear and unmistakable" evidence of delegations to the arbitrator, a court "possesses no power to decide [these] arbitrability issue[s]" and must compel arbitration. *Henry Schein*, 586 U.S. at 68–69.

The Parties expressly vested the arbitrator with exclusive authority to decide all questions of arbitrability. The Arbitration Agreement requires arbitration of "all disputes arising out of or related to these terms of use or any aspect of the relationship between [the Parties]" and grants the

---

[3] The Arbitration Agreement is otherwise between capable parties, for a lawful object, and valid consideration exists in the form of the parties' mutual promise to arbitrate their disputes within the context of the broader Terms & Conditions under which Scheels provides access to its retail services. *See Vernon*, 857 F. Supp. 2d at 1152–56.

arbitrator "exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Disputes Section, including, but not limited to, a claim that all or any part of it is voidable or void." Ex. A at 9–11 (capitalization altered). Nearly identical language has been deemed "clear and unmistakable evidence" that the parties agreed to delegate to the arbitrator questions of "whether the agreement applies and the dispute is arbitrable." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 833 (10th Cir. 2023).

Here, the Arbitration Agreement incorporates the American Arbitration Association ("AAA") Consumer Arbitration Rules, which delegate to the arbitrator "the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." Consumer Arbitration Rules and Mediation Procedures of the American Arbitration Association, R-7(a), https://www.adr.org/media/yawntdvs/2025_consumer_arbitration_rules.pdf (May 1, 2025); *see also* Ex. A at 10–11 (stating arbitrator has the "exclusive authority" to resolve disputes). This too "clearly and unmistakably evinces [the parties'] intent to arbitrate arbitrability." *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018).

Because both the Arbitration Agreement and the AAA Rules incorporated therein clearly and unmistakably delegate questions of arbitrability to the arbitrator, this Court should end its inquiry and compel arbitration.

D.    **Arbitrable Plaintiffs' Claims Are Covered By The Arbitration Agreement**

Questions of scope should not be decided here because the arbitrator has the "exclusive authority" to determine whether the claims at issue are within the scope of the Arbitration Agreement. But even if this Court reaches such questions, Arbitrable Plaintiffs' claims fall within

the Arbitration Agreement's broad scope requiring arbitration of "all disputes" that "aris[e] out of or [are] related to these terms of use or any aspect of the relationship between [the parties]" and should be arbitrated. Ex. A at 9 (capitalization altered); *see Santana v. Verizon Wireless*, 2014 WL 2197804, at *3 (N.D. Okla. May 27, 2014) (provision covering "claims arising out of or relating to any aspect of the relationship between [the parties]" presumed arbitrable).

Arbitration is "required" where "the parties have contracted for it" as evidenced by a broad agreement that creates a "strong presumption" in favor of arbitration. *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (contract language "defines the scope of disputes subject to arbitration"). Broad arbitration agreements require "arbitration of even a collateral matter" if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it." *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005); *see also Moses*, 460 U.S. at 24–25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

The crux of Arbitrable Plaintiffs' claims against Scheels, whether brought by Direct or Indirect Purchaser Plaintiffs, is that Scheels participated in an industry-wide price-fixing conspiracy to raise prices and eliminate horizontal price competition for archery products. DPPC ¶¶ 1–4, 8–9, 104; IPPC ¶¶ 3–5, 59, 63, 149. Because of that alleged conspiracy, Arbitrable Plaintiffs say they purchased archery products—either directly from a defendant, manufactured by a defendant, or by an unnamed co-conspirator—that were more expensive. DPPC ¶¶ 213–14; IPPC ¶¶ 181–82. Under Arbitrable Plaintiffs' own theory, their claims against Scheels relate to or arise out of their relationship with Scheels as a retailer of archery products and a member of the alleged conspiracy, regardless of whether they purchased archery products from Scheels or from another

11

retailer. *See Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998) (breadth of the phrase "any aspects of the relationship . . . . clearly establishes that the arbitration clause was intended to apply to all conflicts between the parties"); *Medtronic AVE Inc. v. Cordis Corp.*, 100 F. App'x 865, 868 (3d Cir. 2004) ("[A] clause providing for the arbitration of all matters 'arising from' an agreement overwhelmingly suggests that a given dispute is arbitrable."). Arbitrable Plaintiffs' claims fall within the scope of the Arbitration Agreement.

### E.    There Is No Basis To Avoid Arbitration

Even if the Court were to consider contract-based defenses like unconscionability, notwithstanding that they have been delegated to the arbitrator, none apply. *See* 9 U.S.C. § 2 (arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist . . . for the revocation of any contract"). Arbitrable Plaintiffs cannot meet the high bar for showing both procedural and substantive unconscionability under North Dakota or Colorado law. *See Eberle v. Eberle*, 766 N.W.2d 477, 484–85 (N.D. 2009) (an unconscionable agreement is one "no rational, undeluded person would make, and no honest and fair person would accept, . . . or is blatantly one-sided and rankly unfair"); *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986) (similar); *cf. Vernon*, 857 F. Supp. 2d at 1156–58 (similar agreement; not unconscionable).

#### 1.    The Arbitration Agreement Is Not Procedurally Unconscionable

The inquiry into procedural unconscionability involves an analysis of the fairness of the contract formation. *Eberle*, 766 N.W.2d at 485; *Lakeview Renovations, Inc. v. City & Cnty. of Denver*, 2017 WL 11932533, at *2 (Colo. Ct. App. Nov. 16, 2017); *Larson Latham Huettl LLP v. Iversen*, 985 N.W.2d 662, 668 (N.D. 2023). There was no unfair surprise here. Arbitrable Plaintiffs had clear and conspicuous notice of the Terms & Conditions. They are linked on each page of

Scheels' website, and Arbitrable Plaintiffs assented to their terms when registering or making each of their 12 online purchases. Duerr Decl. ¶¶ 8–14 & Ex. F. The Terms & Conditions call attention to the Arbitration Agreement in capital letters at the top of the document and direct users to the labeled Disputes section containing that agreement. Ex. A at 1, 9. And the presence of an arbitration provision is reasonably anticipated as such provisions are commonplace in contracts of this type and endorsed as a matter of federal policy. *See THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1165–70 (10th Cir. 2014). Thus, the formation of the Arbitration Agreement was not procedurally unconscionable.

### 2.    The Arbitration Agreement Is Not Substantively Unconscionable

An agreement is substantively unconscionable when its terms are unduly harsh or unfairly one-sided. *Eberle*, 766 N.W.2d at 485; *Wright v. United Servs. Auto. Ass'n*, 2025 WL 2416485, at *6 (Colo. Ct. App. Aug. 21, 2025). Here, the Parties are equally bound by the arbitration procedures. Ex. A at 9. Nor do those procedures unduly favor Scheels because the Parties agreed that neutral AAA Rules govern. *Id.* at 10–11. This is not an agreement that "no rational, undeluded person would make, and no honest and fair person would accept." *Eberle*, 766 N.W.2d at 484. Rather, it allows mutual benefit from the speed and economy of arbitration, particularly valuable in multidistrict litigation like this where all parties would face costly, time-intensive litigation but for arbitration. *See THI*, 741 F.3d at 1165–70 (describing liberal federal policy favoring arbitration agreements). There are no grounds to find the Arbitration Agreement substantively unconscionable.

### F.    Arbitration May Not Proceed On A Class Or Collective Basis

Under the express terms of the Arbitration Agreement, Arbitrable Plaintiffs must proceed

with arbitration on an individual basis. "[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *see also Epic Sys. Corp.*, 584 U.S. at 509 ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."). Here, the Arbitration Agreement reflects the Parties' explicit "agree[ment] to bring any dispute on an individual basis only, and not on a class, consolidated, representative, collective, or private attorney general basis in arbitration and litigation." Ex. A at 11 (capitalization altered). Having assented to "arbitration on an individual basis to resolve disputes," Arbitrable Plaintiffs' claims must proceed accordingly. *See id.* at 1.

### G.    The Court Should Stay All Claims Against Scheels Pending Arbitration

The Court should stay all claims against Scheels pending the outcome of the arbitration. Because this "lawsuit involves an arbitrable dispute," Section 3 of the FAA "compels the court to stay the proceeding" with respect to Arbitrable Plaintiffs' claims until this motion is resolved and any subsequent arbitration is completed. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also* 9 U.S.C. § 3 (requiring courts stay action until arbitration is completed). This Court should also exercise its discretion to stay all non-arbitrable claims against Scheels because doing so promotes judicial efficiency and reduces the risk of inconsistent rulings and preclusion. *See Moses*, 460 U.S. at 20 n.23 (recognizing district court's inherent discretion to stay); *Brunson v. Lenzi*, 2025 WL 786699, at *6 (D. Utah Mar. 12, 2025) (exercising discretion to stay non-arbitrable claims to promote judicial economy and avoid inconsistencies); *DiTucci v. Ashby*, 2021 WL 4217332, at *7 (D. Utah Sept. 16, 2021), *aff'd sub nom. DiTucci v. First Am. Title Ins.*, 2023 WL 382923 (10th

14

Cir. Jan. 25, 2023) (granting stay where "arbitrable and nonarbitrable claims arise out of the same series of events" to avoid "two different adjudicating bodies [] simultaneously reviewing similar evidence, resolving similar factual issues, and deciding similar questions of law"). In a purported class action like this one, "[a] stay of all claims is particularly warranted . . . because the complaint admits that common questions of fact and law predominate." *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018).

## V.    CONCLUSION

Scheels respectfully requests that the Court compel individual arbitration of Arbitrable Plaintiffs' claims, stay all claims against Scheels, and grant any further appropriate relief.

Dated: March 20, 2026

Respectfully submitted,

/s/ Allison K. Kostecka
Allison K. Kostecka
**GIBSON, DUNN & CRUTCHER LLP**
1900 Lawrence St., Suite 3000
Denver, CO 80202-2211
Telephone: (303) 298-5700
Fax: (303) 323-2929
E-mail: akostecka@gibsondunn.com

Rachel S. Brass
Logan R. Freeborn
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Fax: (415) 393-8306
E-mail: rbrass@gibsondunn.com
E-mail: lfreeborn@gibsondunn.com

*Attorneys for Defendant Scheels*

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notifications of such filing to all

counsel of record.

_/s/ Lynette Apodaca_____
Lynette Apodaca